FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

MPP/JKMcD:2017R00521

2021 MAY 13  PM 4: 19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEPUTY

UNITED STATES OF AMERICA

v.

**WILLIAM PATRICK MITCHELL and
WAYNE I. KACHER, JR.,**

Defendants.

CRIMINAL NO. 1:21-cr-00090-SAG

**(18 U.S.C. § 371, Conspiracy to Commit
Offenses Against the United States; 18
U.S.C. §§ 1343, 1346, Honest Services Wire
Fraud; 18 U.S.C. § 666(a)(1)(B), (a)(2),
Bribery Concerning Programs Receiving
Federal Funds; 18 U.S.C. § 666(a)(1)(A),
Theft Concerning Programs Receiving
Federal Funds; Forfeiture, 18 U.S.C.
§ 981(a)(1)(C), 28 U.S.C. § 2461(c))**

## SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges that:

## COUNT 1
### Conspiracy to Commit Offenses Against the United States

### Introduction

1.      At all times relevant to this Superseding Indictment, Defendant **WILLIAM
PATRICK MITCHELL ("MITCHELL")** was a resident of Cambridge, Maryland.
**MITCHELL** also owned a home in Sarasota, Florida.

2.      In 2006, the Maryland Broadband Cooperative, Incorporated ("MdBC") was
created by legislative intent by the Maryland General Assembly with the directed purpose of
working with internet service providers to offer broadband internet service to both under-served
and un-served areas all across Maryland.  MdBC is a not-for-profit corporation that is governed
by a board of directors.  For a fee, public and private entities can join the cooperative and gain

access to the fiber optic cable infrastructure that MdBC has installed to provide improved internet service throughout the Eastern Shore of Maryland and the rest of the state.

3.      Initially, MdBC's primary source of income was public funding provided by the federal government and the State of Maryland. As MdBC grew, it began earning more private income from customers who paid to access the broadband infrastructure that it had installed.

4.      MdBC's office is located at 2129A Northwood Drive, Salisbury, Maryland 21801.

5.      MdBC maintained bank accounts at M&T Bank (accounts ending in x1664 and x9149), Hebron Bank (accounts ending in x5801 and x7801), and Provident State Bank (account ending in x5699). MdBC also maintained a line of credit with Hebron Bank.

6.      Beginning in 2006, **MITCHELL** worked as a construction manager for MdBC, and in March 2009, the Board of Directors promoted **MITCHELL** to President and Chief Executive Officer ("CEO"). **MITCHELL's** annual salary as President and CEO began at $167,532.22 in 2009 and grew to $228,659.00 by 2018. The Board of Directors also typically awarded **MITCHELL** an annual bonus, which was around 20 percent of his salary.

7.      As President and CEO of MdBC, **MITCHELL** was a fiduciary of MdBC and owed MdBC a duty of loyalty to conduct its business for the benefit of MdBC and to advance its interests.

8.      **MITCHELL** maintained a personal bank account at M&T Bank (account ending in x3748).

9.      At all times relevant to this Superseding Indictment, defendant **WAYNE I. KACHER, JR., ("KACHER")** was the president and owner of Bel Air Underground Services, Inc. ("BAU"). BAU was an underground utility company that specialized in the construction of new fiber optic and electrical infrastructure. BAU was principally located at 725 Pulaski Highway, Joppatowne, Maryland 21085.

2

10.     At all times relevant to this Superseding Indictment, **KACHER** was a resident of Harford County, Maryland.

11.     BAU frequently served as a subcontractor on projects for MdBC.

12.     BAU maintained bank accounts at M&T Bank (accounts ending x8534 and x5867), and First National Bank (accounts ending in x4207 and x3009).

13.     **KACHER** was also the president and owner of Pro Comm Engineering & Locating Services, LLC ("Pro Comm"). Pro Comm specialized in underground utility and communications infrastructure locating. Pro Comm was principally located at 725 Pulaski Highway, Joppatowne, Maryland 21085. Pro Comm also acted as a subcontractor on projects for MdBC.

### The Cooperative Agreement

14.     On the western shore of the Chesapeake Bay, the United States Navy (hereafter "Navy") maintains the Patuxent River Naval Air Station (hereafter "Pax River") in St. Mary's County, Maryland. Pax River hosts, among other tenants, the Naval Air Warfare Center Aircraft Division ("NAWCAD"). NAWCAD's mission is to provide research, development, testing, evaluation and sustainment for all Navy and Marine Corps aircraft systems.

15.     The Atlantic Test Ranges ("ATR") of the NAWCAD provide the open air range environment in support of the Navy's principal research, development, test and evaluation for Naval aircraft, engines, avionics, aircraft support systems and ship/shore air operations, fleet readiness training and experimentation.

16.     The United States National Aeronautics and Space Administration ("NASA") maintains a facility on Wallops Island, Virginia, which is located on the Eastern Shore of Virginia. ATR maintains a partnership with NASA's Wallops Island wherein the Wallops airfield provides target launch facilities, refueling capabilities, and a communications and telemetry relay back to

the ATR control room at Pax River for easy data exchange and test monitoring. By partnering with NASA at Wallops, ATR extends its range capabilities into the Mid-Atlantic operating areas.

17. On September 26, 2008, NAWCAD entered into a cooperative agreement with MdBC "for the deployment of technology supporting infrastructure; specifically world-class broadband networks across the rural communities of Eastern, Southern and Western Maryland." Cooperative Agreement, Award/Contract N00421-08-2-00 01 (hereafter "Fiber Optic Agreement"). The Fiber Optic Agreement stated that NAWCAD and MdBC had overlapping goals – MdBC sought to build-out broadband networks throughout the Eastern Shore of Maryland, and NAWCAD sought to install a fiber optic broadband connection from NASA Wallops Island to Pax River to enhance the communications capacity between those locations. Through the Fiber Optic Agreement, NAWCAD and the Navy agreed to fund MdBC's installation of fiber optic cable from NASA Wallops Island to NAWCAD – a project that the parties referred to as the "Pax River Project." MdBC would also be able to use that fiber optic cable and accompanying infrastructure to provide broadband internet access to customers on the Eastern Shore.

18. Cooperative agreements for the Department of Defense and armed services are governed by the Department of Defense Grant and Agreement Regulations. Cooperative agreements are similar to grants in that they fund or stimulate a public purpose, but unlike a grant, cooperative agreements involve ongoing management from the federal government. *See* 31 U.S.C. § 6305; 32 C.F.R. § 21.640.

19. The Pax River Project was divided into the following phases and milestones:

4

| | |
|---|---|
| **Phase I,  Land Segment 1 –** | **Wallops to Westover Duct only – Completed** |
| **Phase II, Land Segment 2 –** | **Wallops to Cambridge –Completed** |
| **Phase II, Land Segment 3 –** | **Westover to Fairmont Tower Site - Completed** |
| **Phase III/IV, Milestone I --** | **Environmental Engineering Chesapeake Bay Crossing,** |
| **Phase III, Milestone II** | **Church Creek Rd (Hyatt), Cambridge to Taylors Island** |
| **Phase IV, Milestone III --** | **Chesapeake Bay Crossing Taylors Island to Cove Point** |
| **Phase V, Milestone IV** | **Western Shore Land Segment – Cove Point to Patuxent River,** |

The first two phases had already been completed through an earlier cooperative agreement.

20.     The Navy agreed to pay MdBC as these milestones were reached. In addition, "[i]nterim payments may be requested monthly by [MdBC] for reimbursement of the [Navy's] share of incurred costs."

21.     The Fiber Optic Agreement specified that federal funds and funds provided by MdBC "are to be used solely for Agreement-related costs incurred that are reasonable in nature and amount, and allocable to this Agreement."

22.     MdBC acted as a general or prime contractor on the Pax River Project.  BAU worked as a subcontractor for MdBC on portions of the Pax River Project.

23.     The Defense Finance and Accounting Service ("DFAS") provides payment services for the Department of Defense and its subcomponents, including the Navy.  DFAS received and paid all invoices from MdBC through interstate wires.  MdBC electronically submitted all invoices to DFAS using the Wide Area Workflow System ("WAWF") which operates through interstate wires.  The DFAS servers that received the WAWF invoices are located in Ogden, Utah.  The DFAS bank account that paid all of MdBC's invoices is located in Cleveland, Ohio.

24.     **MITCHELL** was primarily responsible for submitting invoices to the Navy. **MITCHELL** either submitted the invoices through the WAWF system himself, or he directed MdBC's Chief Financial Officer ("Employee 1") to submit them.  **MITCHELL** owed a duty to

5

MdBC and to the Navy to submit invoices only for work that had been performed on the Pax River Project or for work that it planned to perform.

25.     MdBC's invoices were reviewed and approved for payment by the Government Program Manager for the Pax River Project.

26.     The Fiber Optic Agreement initially required the Navy to pay MdBC $9,748,633.75. The Navy and MdBC modified the Fiber Optic Agreement several times from 2008 to 2018, and the Navy ultimately agreed to pay MdBC $24,527,278.70 under the Fiber Optic Agreement.

27.     MdBC completed its work under the Fiber Optic Agreement in 2020.

28.     From 2014 to 2018, MdBC paid BAU approximately $9.5 million, including approximately $6.8 million was for work on the Pax River Project. From 2014 to 2018, MdBC also paid Pro Comm more than $500,000.00.

## The Conspiracy

29.     From in and around July 2014 until 2018, in the District of Maryland and elsewhere,

### WILLIAM PATRICK MITCHELL and
### WAYNE I. KACHER, JR.

knowingly and willfully conspired and agreed together with other co-conspirators known and unknown to members of the Grand Jury to commit offenses against the United States, namely, to commit violations of:

> a. 18 U.S.C. §§ 1343 and 1346 by knowingly devising and intending to devise a scheme and artifice to defraud MdBC of the intangible right to honest services of **MITCHELL**, through bribery, kickbacks and the concealment of material information, (hereafter "Scheme and Artifice to Defraud"), and to execute or further the scheme and artifice to defraud, did transmit and cause to be transmitted by

6

means of wire communication in interstate commerce writings, signs, signals, and sounds; and

b.  18 U.S.C. § 666, whereby **MITCHELL**, as an agent of an organization receiving more than $10,000 in federal assistance, did corruptly solicit, demand, accept and agree to accept a thing of value, intending to be influenced and rewarded in connection with a transaction and series of transactions of MdBC involving $5,000.00 or more, and whereby **KACHER** corruptly gave, offered, and agreed to give a thing of value to **MITCHELL** with the intent to influence and reward an agent of an organization receiving more than $10,000 in federal assistance in connection with a transaction and series of transactions of MdBC involving $5,000 or more.

### The Object of the Conspiracy and the Scheme and Artifice to Defraud

30.     The object of the Conspiracy and the Scheme and Artifice to Defraud was for **MITCHELL** to secretly use his official position at MdBC to enrich himself by soliciting and accepting gifts, payments, and other things of value from **KACHER** and BAU in exchange for favorable official action, and for **KACHER** to enrich himself by secretly obtaining favorable official action for himself, BAU, and Pro Comm through corrupt means.

### The Manner and Means of the Conspiracy and the Scheme and Artifice to Defraud

31.     From July 2014 to 2018, **MITCHELL** submitted, or caused MdBC to submit, invoices to the Navy, purportedly for work on the Pax River Project, which caused the Navy to pay MdBC. In fact, **MITCHELL** used funds from the Navy not only to pay for work on the Pax River Project, but also to pay funds to BAU, disguised as payments for work performed by BAU,

or to be performed by BAU, which **MITCHELL** could then direct **KACHER** to pay to, and for the benefit of, **MITCHELL** personally.

     32.    To make and conceal the payments **MITCHELL** received from **KACHER** and BAU, once BAU received invoice payments from MdBC, **KACHER** purchased bank cashier's checks made payable to **KACHER** or to cash, which **KACHER** then endorsed and signed over to **MITCHELL,** and which **MITCHELL** then deposited into his personal bank account. Specifically:

    a.   On June 30, 2014, **MITCHELL** submitted or caused MdBC to submit two invoices to the Navy (Invoice Nos. 23 and 24A) totaling $433,796.27 for work on Phase III, Milestone II and Phase V, Milestone IV of the Pax River Project, which the Navy, through DFAS, paid on July 30, 2014.

    b.   On July 30, 2014, **KACHER** submitted or caused BAU to submit two invoices to MdBC: Invoice No. 1532 for $115,000.00 and Invoice No. 1533 for $135,000.00. Both invoices were for work BAU performed or was to perform on the Pax River Project.

    c.   On August 1, 2014, **MITCHELL** made or caused MdBC to make two payments to BAU totaling $250,000.00.

    d.   On August 1, 2014, **KACHER** obtained a check for $25,000.00 drawn on BAU's M&T Bank account ending in x8534 and **KACHER** made the check payable to cash. **KACHER** endorsed the check and used it to purchase an official check (Official Check #3005897184) in the same amount and payable to KACHER. KACHER endorsed the official check and delivered it to **MITCHELL**.

8

e.  On August 1, 2014, **MITCHELL** negotiated the official check by depositing $17,000.00 into his personal M&T Bank account ending in x3748 and withdrawing $8,000.00 in cash.

f.  On October 29, 2014, **KACHER** submitted or caused BAU to submit two invoices to MdBC: Invoice No. 1584 for $58,500.00 and Invoice No. 1584A for $97,500.00. Both invoices were for work BAU performed or was to perform on the Pax River Project.

g.  On October 30, 2014, **MITCHELL** obtained or caused MdBC to obtain a $156,000.00 loan advance on MdBC's line of credit from Hebron Bank.

h.  On October 30, 2014, **MITCHELL** made or caused MdBC to make two payments to BAU totaling $156,000.00.

i.  On October 31, 2014, **KACHER** obtained a check for $20,000.00 drawn on BAU's M&T Bank account ending in x5867 and **KACHER** made the check payable to cash. **KACHER** endorsed the check and used it to purchase an official check (Official Check #3005678628) in the same amount and payable to **KACHER**. **KACHER** endorsed the official check and delivered it to **MITCHELL**.

j.  On October 31, 2014, **MITCHELL** negotiated the official check by depositing the entire amount into his personal M&T Bank account ending in x3748.

k.  On November 6, 2014, **MITCHELL** submitted or caused MdBC to submit two invoices (Invoice Nos. 28 and 29) to the Navy totaling $575,971.01 for Phase III, Milestone II and Phase V, Milestone IV of the Pax River Project, which the Navy, through DFAS, paid on November 20, 2014.   On November 24, 2014,

9

**MITCHELL** caused MdBC to repay the $156,000.00 loan advance from Hebron Bank.

l.  On December 4, 2014, **MITCHELL** submitted or caused MdBC to submit an invoice (Invoice No. 30) to the Navy in the amount of $1,000,000 for work on Phase IV, Milestone III of the Pax River Project.

m. On December 11, 2014, **KACHER** submitted or caused BAU to submit two invoices to MdBC:  Invoice No. 1556 for $240,000.00 and Invoice No. 1556A for $10,000.00.  Both invoices were for work BAU performed or was to perform on the Pax River Project.

n.  On December 11, 2014, **MITCHELL** obtained or caused MdBC to obtain a $250,000.00 loan advance on its existing line of credit with Hebron Bank.

o.  On December 11, 2014, **MITCHELL** made or caused MdBC to make two payments to BAU totaling $250,000.00.

p.  On December 11, 2014, **KACHER** obtained a check for $20,000.00 drawn on BAU's M&T Bank account ending in x8534 and **KACHER** made the check payable to **KACHER.  KACHER** endorsed the check and used it to purchase an official check (Official Check #3006263574), payable to **KACHER**, in the same amount.   **KACHER** endorsed the official check and delivered it to **MITCHELL**.

q.  On December 12, 2014, **MITCHELL** negotiated the official check by depositing $15,000.00 into his personal M&T Bank account ending in x3748 and withdrawing $5,000.00 in cash.

r.  On December 22, 2014, the Navy, through DFAS, paid Invoice No. 30 in the amount of $1 million.

s.  On December 29, 2014, **MITCHELL** caused MdBC to repay the $250,000.00 loan advance from Hebron Bank with the funds it received from the Navy.

33.  To make and conceal the payments **MITCHELL** received from **KACHER** and BAU, after BAU's receipt of payments from MdBC, **MITCHELL** caused BAU and **KACHER** to use BAU funds to pay benefits to and for **MITCHELL** including payments for goods and services.  Specifically:

> a.  On September 6, 2016, **MITCHELL** submitted or caused MdBC to submit an invoice to the Navy (Invoice No. 32) for $1,300,000.00 for work on Phase IV, Milestone III of the Pax River Project.
>
> b.  On September 14, 2016, **MITCHELL** submitted or caused MdBC to submit an invoice to the Navy (Invoice No. 33) for $2,000,000.00 for work on Phase IV, Milestone III of the Pax River Project.
>
> c.  On September 28, 2016, **KACHER** submitted or caused BAU to submit Invoice No. 2045 in the amount of $117,364.50 to MdBC.
>
> d.  On October 13, 2016, the Navy paid Invoice Nos. 32 and 33 to MdBC.
>
> e.  On October 14, 2016, at **MITCHELL's** request, Eastern Shore Pole Buildings, LLC prepared a contract for the installation of a detached garage at **MITCHELL's** Cambridge, Maryland residence for $36,419.00.  **MITCHELL** signed the contract on October 18, 2016.
>
> f.  On October 17, 2016, **KACHER** submitted or caused BAU to submit Invoice No. 2050 in the amount of $350,000.00 to MdBC for work on the Pax River Project.
>
> g.  On October 17, 2016, **MITCHELL** made or caused MdBC to make a payment to BAU in the amount $467,364.50.

11

h. On October 17, 2016, **MITCHELL** caused **KACHER** to pay $21,721.80 to Eastern Shore Pole Buildings, which was 60% of the purchase price that **MITCHELL** owed for the construction of the detached garage on **MITCHELL's** property.

i. On November 1, 2016, **KACHER** submitted or caused BAU to submit Invoice No. 2055 in the amount of $50,000.00 to MdBC for work on the Pax River Project.

j. On November 1, 2016, **MITCHELL** made or caused MdBC to make a payment to BAU for $50,000.00.

k. On November 8, 2016, **MITCHELL** caused **KACHER** and BAU to pay $3,000.00 to Peninsula Cabinets for work performed at **MITCHELL's** residence in Cambridge, Maryland.

l. Also on November 8, 2016, **MITCHELL** caused **KACHER** and BAU to pay $6,800.00 to Value Carpet for flooring and other services performed at **MITCHELL's** residence in Cambridge, Maryland.

m. On November 18, 2016, **MITCHELL** caused **KACHER** and BAU to pay $10,972.61 to Delmarva Power Sports to purchase an all-terrain vehicle for **MITCHELL**.

n. Also on November 18, 2016, **MITCHELL** caused **KACHER** and BAU to pay $14,697.20 to Eastern Shore Pole Buildings for the remaining balance of the detached garage **MITCHELL** caused to be constructed at **MITCHELL's** residence in Cambridge, Maryland.

o. On November 22, 2016, **KACHER** submitted or caused BAU to submit three invoices to MdBC:  Invoice No. 2022 for $68,311.62, Invoice No. 2060 for $600,000.00, and Invoice No. 2061 for $75,000.00.

p. On November 23, 2016, **MITCHELL** made or caused MdBC to make three payments to BAU totaling $743,311.62.

q. On February 8, 2017, **MITCHELL** submitted or caused MdBC to submit an invoice to the Navy (Invoice No. 35) for $1,665,127.00 for work on Phase IV, Milestone III of the Pax River Project.

r. On or about March 6, 2017, the Navy paid Invoice No. 35 to MdBC.

s. On or about April 21, 2017, **KACHER** submitted or caused BAU to submit an Invoice to MdBC in the amount of $497,000.00 for work on the Pax River Project.

t. On April 21, 2017, **MITCHELL** made or caused MdBC to make a payment to BAU in the amount of $497,000.00.

u. On April 27, 2017, **KACHER** sent **MITCHELL** a text message stating, "Good morning, do you think I could borrow 134k and pay you back?" **MITCHELL** later replied, "135k should be in your account within the hour two hours at latest."

v. On or about April 28, 2017, **MITCHELL** made or caused MdBC to loan **KACHER** and BAU $135,000.00.

w. On May 25, 2017, **MITCHELL** sent a text message to **KACHER** stating, "John Deere is still showing a balance you sure [BAU employee] took care of it[.]"

x. Previously, in March 2016, **MITCHELL** purchased a John Deere utility vehicle ("UTV"), Model XUV 825i S4 Multi-Passenger Gator, for $22,200.00.  To

13

purchase the UTV, **MITCHELL** borrowed $17,778.18 from John Deere Financial. The term of the loan was 60 months, and the interest rate on the loan was 7.5%.

y.  On May 26, 2017, **MITCHELL** sent a text message to **KACHER** stating, "Is John deer [sic] all straight[.]" **KACHER** replied, "John Deere payment done . . . in the Amt of $15,215.75."

34.  To further make and conceal the payments **MITCHELL** received from **KACHER** and BAU, **KACHER** would surreptitiously provide cash and other benefits directly to **MITCHELL**. For example:

a.  On April 27, 2016, **KACHER** sent **MITCHELL** a text message stating, "I'll stop over and hide the package somewhere at the farm." Later that day, **KACHER** sent a text message to **MITCHELL**, stating "Package is in the tractor under the floor mat."

b.  **MITCHELL** replied to the text message stating, "Thanks for the package buddy."

c.  **KACHER** replied, "Thank you for all you do! Not to mention the awesome friendship."

d.  On May 25, 2017, **KACHER** sent **MITCHELL** a text messaged stating "I'll send you a Fed Ex package today." **MITCHELL** replied, "Not sure when I'm headed back but please send package."

e.  Later on May 25th, **KACHER** sent **MITCHELL** a text message stating, "Walking in to Fed Ex, what's the address." **MITCHELL** replied with his address in Sarasota, Florida. **KACHER** responded, "Got it" and "Sending 5."

f.  On May 26, 2017, **KACHER** sent a text message to **MITCHELL** stating, "Sending second Fed Ex now, didn't want to put 5 in one package." **KACHER**

14

later wrote in a text message, "Did you get first package." **MITCHELL** responded,

"Yes sir thank you." **KACHER** replied, "Second will be there Monday by 10:30."

35.      To further conceal the payments **MITCHELL** received from **KACHER** and BAU,

**MITCHELL** falsely represented to special agents with the Federal Bureau of Investigation

("FBI") that the payments were not kickback payments.

**Overt Acts**

36.      In furtherance of the Conspiracy and the Scheme and Artifice to Defraud,

**MITHELL** and **KACHER** engaged in the following overt acts:

a.  On August 1, 2014, **MITCHELL** made or caused MdBC to make two payments to
BAU totaling $250,000.00:  Check No. 4786 in the amount of $135,000.00 and
Check No. 4787 in the amount of $115,000.00.

b.  On August 1, 2014, **KACHER** endorsed Official Check #3005897184 and
delivered it to **MITCHELL**.

c.  On October 30, 2014, **MITCHELL** made or caused MdBC to make two payments
to BAU totaling $156,000.00:  Check No. 6692 in the amount of $240,000.00 and
Check No. 6693 in the amount of $10,000.00.

d.  On October 31, 2014, **KACHER** endorsed #3005678628 and delivered it to
**MITCHELL**.

e.  On December 11, 2014, **MITCHELL** made or caused MdBC to make two
payments to BAU totaling $250,000.00.

f.  On or about December 12, 2014, **KACHER** endorsed Official Check #3006263574
to **MITCHELL** in the amount of $20,000.00.

15

g.  On October 17, 2016, **MITCHELL** made or caused MdBC to make a payment to BAU in the amount $467,364.50.

h.  On or about October 17, 2016, **KACHER** paid or caused BAU to pay Eastern Shore Pole Buildings $21,721.80 for **MITCHELL's** benefit.

i.  On November 1, 2016, **MITCHELL** made or caused MdBC to make a payment to BAU for $50,000.00.

j.  On or about November 8, 2016, **KACHER** paid or caused BAU to pay Peninsula Cabinets $3,000.00 for **MITCHELL's** benefit.

k.  On or about November 8, 2016, **KACHER** paid or caused BAU to pay Value Carpet $6,800.00 for **MITCHELL's** benefit.

l.  On or about November 18, 2016, **KACHER** paid or caused BAU to pay Delmarva Power Sports $10,972.61 for **MITCHELL's** benefit.

m. On or about November 18, 2016, **KACHER** paid or caused BAU to pay Eastern Shore Pole Buildings $14,697.20 for **MITCHELL's** benefit.

n.  On November 23, 2016, **MITCHELL** made or caused MdBC to make three payments to BAU totaling $743,311.62.

o.  On or about April 24, 2017, **MITCHELL** made or caused MdBC to make a payment to BAU in the amount of $497,000.00.

p.  On or about April 28, 2017, **MITCHELL** made or caused MdBC to make a payment to BAU in the amount of $135,000.00.

q.  On or about May 26, 2017, **KACHER** paid or caused BAU to pay John Deere Financial $15,215.75 for **MITCHELL's** benefit.

18 U.S.C. § 371

16

**COUNT 2**
**Honest Services Wire Fraud**

1.      The allegations in paragraphs 1 through 28 and 31 through 35 of Count 1 are incorporated herein by reference.

2.      On or about December 12, 2014, in the District of Maryland and elsewhere, the defendant

**WILLIAM PATRICK MITCHELL**

for the purpose of executing the Scheme and Artifice to Defraud did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely by negotiated Official Check # 3006263574 when **MITCHELL** deposited $15,000.00 into his personal M&T Bank account and withdrawing $5,000.00 in cash,  Official Check #3006263574 transited from an M&T Bank branch in Maryland through an interstate wire to M&T Bank's server location in Buffalo, New York.

18 U.S.C. §§ 1343, 1346
18 U.S.C. § 2

## COUNTS 3 through 7
## Honest Services Wire Fraud

1.     The allegations in paragraphs 1 through 28 and 31 through 35 of Count 1 are incorporated herein by reference.

2.     On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants

## WILLIAM PATRICK MITCHELL and
## WAYNE I. KACHER, JR.

for the purpose of executing the Scheme and Artifice to Defraud did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely:

| Count | Date of Wire | Description of Wire Transmission |
|-------|--------------|-------------------------------|
| 3 | September 6, 2016 | **MITCHELL** submitted and caused to be submitted Invoice No. 32 in the amount of $1,300,000.00 from MdBC to DFAS and the Navy through the WAWF system; the invoice was transmitted by interstate wire from MdBC in Maryland to the DFAS servers in Ogden, Utah. |
| 4 | September 14, 2016 | **MITCHELL** submitted or caused to be submitted Invoice No. 33 in the amount of $2,000,000.00 from MdBC to DFAS and the Navy through the WAWF system; the invoice was transmitted by interstate wire from MdBC in Maryland to the DFAS servers in Ogden, Utah. |
| 5 | October 13, 2016 | DFAS, on behalf of the Navy, paid Invoice Nos. 32 and 33 by transmitting funds from its bank account in Cleveland, Ohio to MdBC's M&T bank account ending in x1664. |
| 6 | February 8, 2017 | **MITCHELL** submitted and caused to be submitted Invoice No. 35 in the amount of $1,655,127.00 from MdBC to DFAS and the Navy through the WAWF system; the invoice was transmitted by interstate wire from MdBC in Maryland to the DFAS servers in Ogden, Utah. |

| 7 | March 6, 2017 | DFAS, on behalf of the Navy, paid Invoice No. 35 by transmitting funds from its bank account in Cleveland, Ohio to MdBC's M&T bank account ending in x1664. |
|---|---|---|

18 U.S.C. §§ 1343, 1346
18 U.S.C. § 2

## COUNTS 8 through 14
### Bribery concerning programs receiving federal funds

1.      The allegations in paragraphs 1 through 28 of Count 1 are incorporated herein by reference.

2.      In each of calendar years from 2014 through 2018, MdBC received more than $10,000.00 in federal assistance arising from the Pax River Project Fiber Optic Agreement, and in each of calendar years 2014 through 2018, **MITCHELL** was an agent of MdBC.

3.      On or about the dates set forth below, in the District of Maryland and elsewhere, defendant

### WILLIAM PATRICK MITCHELL

an agent of MdBC, did corruptly solicit, demand, accept and agree to accept something of value from **KACHER** and BAU, intending to be influenced and rewarded in connection with any business, transaction and series of transactions of MdBC involving $5,000.00 or more.

| Count | Date | Thing of Value |
|-------|------|----------------|
| 8 | December 12, 2014 | Official Check # 3006263574 in the amount of $20,000.00 |
| 9 | October 17, 2016 | Payment to Eastern Shore Pole Buildings for $21,721.80 |
| 10 | November 8, 2016 | Payment to Peninsula Cabinets for $3,000.00 |
| 11 | November 8, 2016 | Payment to Value Carpet for $6,800.00 |
| 12 | November 18, 2016 | Payment to Delmarva Power Sports for $10,972.61 |
| 13 | November 18, 2016 | Payment to Eastern Shore Pole Buildings for $14,697.20 |
| 14 | May 26, 2017 | Payment to John Deere Financial for $15,215.75 |

18 U.S.C. § 666(a)(1)(B)
18 U.S.C. § 2

## COUNTS 15 through 20
## Bribery Concerning Programs Receiving Federal Funds

1.      The allegations in Paragraphs 1 and 2 of Counts 8 through 14 are incorporated herein by reference.

2.      On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant

### WAYNE I. KACHER, JR.

corruptly gave, offered, and agreed to give a thing of value to **MITCHELL**, with the intent to influence and reward **MITCHELL** in connection with any business, transaction and series of transactions of MdBC involving $5,000.00 or more.

| Count | Date | Thing of Value |
|-------|------|----------------|
| 15 | October 17, 2016 | Payment to Eastern Shore Pole Buildings for $21,721.80 |
| 16 | November 8, 2016 | Payment to Peninsula Cabinets for $3,000.00 |
| 17 | November 8, 2016 | Payment to Value Carpet for $6,800.00 |
| 18 | November 18, 2016 | Payment to Delmarva Power Sports for $10,972.61 |
| 19 | November 18, 2016 | Payment to Eastern Shore Pole Buildings for $14,697.20 |
| 20 | May 26, 2017 | Payment to John Deere Financial for $15,215.75 |

18 U.S.C. § 666(a)(2)
18 U.S.C. § 2

**COUNTS 21 through 23**
**Embezzlement Concerning Programs Receiving Federal Funds**

1.      The allegations in paragraphs 1 through 28 of Count 1 are incorporated herein by reference.

2.      **MITCHELL** was authorized to use an MdBC business credit card for MdBC business, including "for travel, lodging, meals and business expenses approved by the Board of Directors." **MITCHELL's** MdBC credit card was a VISA card ending in x6714 and was issued by M&T Bank.

3.      **MITCHELL**, however, frequently used his MdBC credit card for personal purchases. **MITCHELL** also used MdBC checks to pay for personal purchases.

4.      **MITCHELL** identified to the accounting department at MdBC some personal expenses that **MITCHELL** paid for with his business credit card that were to be deducted from **MITCHELL**'s yearly bonus; however, **MITCHELL** falsely claimed that many of his personal expenses were for "marketing" and other business expenses that **MITCHELL** incurred on behalf of MdBC.

5.      All MdBC employees who received company credit cards were required to provide receipts to support all purchases on the credit card. **MITCHELL**, however, did not always provide receipts for his purchases, and in one case, **MITCHELL** created a false and fictitious receipt to conceal a personal purchase on his MdBC credit card.

6.      From April 8, 2016 until the Board of Directors terminated his employment in January 2019, **MITCHELL** used his MdBC credit card and MdBC bank accounts to pay for more than $160,000.00 in personal expenses.

7.      From April 8, 2016 to his termination in January 2019, **MITCHELL** charged at least $66,604.00 on MdBC credit card to pay for docking fees, maintenance, and sound and

22

lighting enhancements for his personal boat, "Reelin Fiber," which **MITCHELL** docked at two marinas in Sarasota, Florida. **MITCHELL** did not identify to MdBC any of these expenses as "personal."

8. In 2017 and 2018, **MITCHELL** and another MdBC employee, Employee 1, spent more than $20,000.00 of MdBC funds for **MITCHELL** and his family and Employee 1 and his/her family to vacation in Costa Rica in February 2018.

9. **MITCHELL** and Employee 1 charged the Costa Rica trip expenses against multiple MdBC credit cards, and they also used MdBC funds by writing an MdBC check payable to "cash" in the amount of $2,500.00 which they cashed and spent.

10. **MITCHELL** and Employee 1 did not identify any of these expenses to MdBC as "personal."

11. In each twelve-month period listed below, MdBC received more than $10,000 in payments from the federal government through the Fiber Optic Agreement.

## The Charges

12. In each twelve-month period set forth below, in the District of Maryland and elsewhere, defendant

## WILLIAM PATRICK MITCHELL

who was an agent of an organization, namely MdBC, receiving federal benefits in excess of $10,000 in the twelve-month periods set forth below, embezzled, stole, obtained by fraud, knowingly converted to the use of any person other than the rightful owner, and intentionally misapplied property of MdBC worth at least $5,000.00:

23

| Count | Year | Misapplied Funds |
|---|---|---|
| 21 | April 8, 2016 – April 7, 2017 | $65,024.00 |
| 22 | April 8, 2017 – April 7, 2018 | $66,264.00 |
| 23 | April 8, 2018 – April 7, 2019 | $35,702.00 |

18 U.S.C. § 666(a)(1)(A)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) as a result of a defendant's conviction under any of the offenses set forth in the Superseding Indictment.

2. Upon conviction of any of the offenses set forth in Counts One through Fourteen or Twenty-One through Twenty-Three of this Superseding Indictment, the defendant

### WILLIAM PATRICK MITCHELL

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

3. Upon conviction of any of the offenses set forth in Counts One, Three through Seven, or Fifteen through Twenty of this Superseding Indictment, the defendant

### WAYNE I. KACHER, JR.

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

4. The property to be forfeited includes but is not limited to a money judgment in an amount equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to any conviction under the preceding paragraph.

5. If any of the above-described property, as a result of any act or omission of a defendants:

25

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred, sold to, or deposited with a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other substitute property of the defendants up to the value of

the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Stephen M. Schenning/MPP*

Stephen M. Schenning
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

5/13/2021

Date