```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                         NORTHERN DIVISION

 3    UNITED STATES OF AMERICA,           )
                                          )
 4              Plaintiff,                )
           vs.                            )
 5                                        ) CRIMINAL NO.:
      WILLIAM PATRICK MITCHELL and        ) 1:21-cr-00090-SAG
 6    WAYNE I. KACHER, JR.,               )
                                          )
 7              Defendant.                )
      _____)
 8

 9                                      Baltimore, Maryland
                                        July 14, 2023
10

11                   TRANSCRIPT OF PROCEEDINGS
                          MOTIONS HEARING
12         BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
                          Courtroom 7C
13

14    For the Plaintiff:

15         MATTHEW P. PHELPS, Esquire
           PAUL A. RILEY, Esquire
16           Office of the United States Attorney
             36 South Charles Street, 4th Floor
17           Baltimore, MD 21201

18    For Defendant Mitchell:

19         LAURA G. ABELSON, Esquire
           CARA K. HALVERSON, Esquire
20           Office of the Federal Public Defender
             100 S. Charles Street, Tower II, 9th floor
21           Baltimore, MD 21201

22    For Defendant Kacher:

23         WILLIAM C. PERICAK, Esquire
             Pericak Law PLLC
24           1101 Connecticut Avenue NW, Suite 450
             Washington, DC 20036-4359
25
      Also Present:  Defendant Mitchell via telephone
```

1      (Computer-aided transcription of stenotype notes)

2                    P R O C E E D I N G S

3      (11:31 a.m.)

4              THE COURT:  Good morning.  Please be seated everyone.

5      Mr. Phelps, would you like to call the case.

6              MR. PHELPS:  Yes, Your Honor, good morning.  Calling

7      Case No. 1:21-cr-90, United States of America versus William

8      Patrick Mitchell and Wayne I. Kacher, Jr.  We're here today for

9      a motions hearing.  Assistant U.S. Attorneys Matt Phelps and

10     Paul Riley on behalf of the United States.

11             THE COURT:  Good morning to you.

12             MS. ABELSON:  Good morning, Your Honor.  Laura

13     Abelson and Cara Halverson on behalf of Mr. Mitchell who is

14     appearing by telephone today.

15             THE COURT:  Good morning to all of you.

16             MR. PERCICAK:  Good morning, Your Honor.  William

17     Pericak on behalf of Mr. Wayne Kacher.  Mr. Kacher has waived

18     his appearance, and I filed it with the court.

19             THE COURT:  Yes, I received both waivers of personal

20     appearance so we don't have either of the defendants present,

21     but they have both permitted this hearing to proceed in their

22     absence -- or at least Mr. Mitchell is able to hear us but not

23     participate.

24             Okay.  So we do have three different motions that

25     have been filed in this case.  So we have a number of issues to

1   discuss.  I want to start with sort of the stand-alone issue of

2   the return of the seized items being sought by Mr. Kacher,

3   which I think is sort of a little bit on its own, and start by

4   asking the Government to again explain to me what the issue is

5   with returning the seized items at this point.

6              MR. PHELPS:  Your Honor, we certainly can.  I think

7   there's a concern if this case does proceed to trial and for

8   whatever reason there's a need to have access to this material.

9   Again, I think we'd love to be convinced that the images that

10  we obtained of those devices are kind of perfect and adequate

11  and have no problems and no issues whatsoever.  I tend to think

12  that e-discovery does tend to have problems associated with it,

13  and I think there's just a concern about relinquishing control

14  of evidence that could be used at trial.

15             THE COURT:  Is there any suggestion -- I assume that

16  the people who made the duplicate copy have checked it over to

17  try their best to ensure that it's adequate?

18             MR. PHELPS:  That is accurate, yes, Your Honor.

19             THE COURT:  I don't need to hear from you.  I do

20  think it's appropriate for it to be returned at this point.

21  The Government has had an opportunity to make a duplicate.  To

22  the extent you'd like to briefly do another check over to make

23  sure that as far as you can tell it's functioning properly,

24  that's fine, but I do think that the defendant is entitled to

25  its return.  And so I will grant ECF 58 to return the items.

1             Okay.  As I said, that was sort of the stand-alone

2    issue.  Then we have a number of issues that at least to some

3    extent, I'll sort of relate together.  It seems to me that

4    maybe a good place to start would be the confrontation clause

5    issue, Mr. Kacher's motion to strike paragraph 35 of Count 1

6    having to do with Mr. Mitchell's statement.  Unless the parties

7    have a better idea of how to proceed.  That seems to be one of

8    many issues that we need to talk about this morning.

9             Mr. Pericak, I'll allow you to go first.

10            MR. PERCICAK:  Thank you, Your Honor.  Very briefly,

11   and it's covered in our papers, but Mr. Mitchell's statement is

12   hearsay.  It's an out-of-court statement, and we cited a number

13   of cases in our reply.  We cited one major case in our moving

14   paper, *Lyle,* and other cases in our reply.  It's an implied

15   assertion and it's offered for the truth of the implied

16   assertion and that's why it's hearsay, and it's not admissible

17   against Mr. Kacher.

18            I can go through with Your Honor the cases and all

19   the reasoning and all that, but I think it's clear in the

20   papers.  The reason why it should be stricken is a *Bruton* issue

21   because it clearly implicates directly Mr. Kacher.  The

22   statement -- when you read the FBI 302, they're showing him

23   checks that Mr. Kacher endorsed to Mr. Mitchell, and Mitchell

24   says that "Those checks are not a kickback, I don't take

25   kickbacks."  It directly -- and it's offered not for the truth

1    of I don't take kickbacks.  Obviously, it's offered that it's a

2    false exculpatory statement and therefore directly implicates

3    Mr. Kacher.

4           So I think it's hearsay, clearly hearsay,

5    and although there are ways that the Court could say, "Well,

6    jury, it's only admissible against Mr. Mitchell," I think under

7    *Bruton*, it's very clear it directly implicates Kacher, and

8    therefore it's a *Bruton* issue, and the Court does not have the

9    discretion to allow it in with a limiting instruction.

10          I would add if the Court disagrees with me on that, I

11   would ask the Court in your discretion to not let it in because

12   it is a strong piece of evidence and recognizing that a

13   limiting instruction -- we want to live in the life of, well,

14   we gave a limiting instruction to the jury and we assume they

15   followed it.  This would be a very tough one for them to

16   follow.  As would -- as we're going to get to the other

17   argument, it's my same position.  Very tough to expect the jury

18   to follow limiting instructions on issues that go right to the

19   heart of what the issue is.  Thank you.

20          THE COURT:  Let me ask you this because you said it

21   pretty clearly implicates Kacher.  The statement itself taken

22   on its face doesn't implicate anybody because it is

23   exculpatory.  But the Government -- the reason for which the

24   Government would be introducing the statement as a false

25   exculpatory, that's what would implicate your client, right?

1      MR. PERCICAK:  Correct.

2      THE COURT:  Do I have that analysis right?

3      MR. PERCICAK:  Of course, *Lyle* says it's the reason

4   that they're offering it that we look at to decide whether or

5   not it's hearsay.  But that's correct.

6      THE COURT:  Do attorneys for Mr. Mitchell have

7   anything they wanted to say on this before I hear from the

8   Government?

9      MS. ABELSON:  No, Your Honor.

10      MR. PHELPS:  So, Your Honor, I don't know if this is

11   semantics or what, but the nature of the motion, the motion to

12   strike, I interpreted it as a motion to strike from the

13   indictment, but it sounds like this is a motion in limine to

14   exclude evidence.  So I'm not really sure that the motion to

15   strike an allegation from the indictment is worthy of much

16   discussion.  I don't know if Your Honor typically lets the

17   indictment go back with the jury.

18      THE COURT:  No, I typically don't.  So to the extent

19   it's a motion to strike something from the indictment, I'm not

20   sure it has much import at this stage.  Do you want to clarify

21   that, Mr. Pericak, in terms of what you're requesting?

22      MR. PERCICAK:  I'm going to request that the

23   indictment go back to the jury because this is a complex case

24   with a lot of evidence, a lot of allegations, and I am

25   constructing my case point by point in rebuttal, and I think

1   that -- of course, Your Honor has the discretion whether or

2   not.  It's not a drug case, it's not the same, you know, "on or

3   about December 6 he did possess with intent" -- it's a very

4   complex civil -- very complex fraud case.  And I think it's

5   important for the jury, when they sit -- I've done these cases,

6   I'm sure Your Honor has done these cases, if they sit for a

7   week and hear all this stuff, if you gave them a test, I don't

8   even know if they remember ten percent of what they heard.  I

9   think it's important that they have some guidelines, and I will

10  request that it go back to the jury at the end.  Obviously then

11  I want that part of it stricken.

12         MR. PHELPS:  So, Your Honor, the statement is not

13  hearsay.  It's being offered for its falsity, not for its

14  truth.  It's also not hearsay because it is a statement in

15  furtherance of the co-conspiracy.  One of the objects of the

16  conspiracy is to conceal the conspiracy and the conspiracy

17  covers 2018; the statement was made in 2018.  Just as

18  defendants and targets try to hide their conduct by concealing

19  their conduct, there's really no difference between that and

20  what happened here.  So for those reasons, I don't think that

21  it's hearsay.

22         I also don't think that it's a *Bruton* issue either,

23  Your Honor, because in order to trigger *Bruton*, there needs to

24  be a confession that implicates the co-defendant.  It's not a

25  confession, it's a denial.  I think there's kind of significant

```
 1    implications if we start saying that a denial, because it's
 2    implausible, turns into a *Bruton* issue because then every time
 3    any defendant denies any conduct in a multidefendant case, you
 4    have a *Bruton* issue.  I don't read *Bruton* or any of the cases
 5    to really extend it that far.
 6            Then additionally, Your Honor, *Bruton* is only an
 7    issue if Mr. Mitchell does not testify, and we don't even have
 8    a trial date yet.  We, frankly, don't even know if we have a
 9    confrontation clause issue yet either.
10            THE COURT:  Okay.
11            MR. PHELPS:  Thank you.
12            MS. ABELSON:  Your Honor, may I be heard?
13            THE COURT:  Yes.
14            MS. ABELSON:  We're going to take no position on this
15    motion, but that was under the assumption that the indictment
16    would not be going back to the jury.  If the indictment is
17    going back to the jury, then we would object to the inclusion
18    of the statement that it was a false statement.
19            THE COURT:  Because -- I don't think I have the
20    indictment --
21            MS. ABELSON:  The indictment itself says it was a
22    false statement which is not a factual allegation.  It's a
23    legal characterization, so we would actually join in
24    Mr. Kacher's motion to strike that from the indictment if the
25    indictment is going back to the jury.
```

1            THE COURT:  All right.  I am not going to decide

2    right now whether the indictment is going back to the jury.

3    Again, my standard policy is that it does not.  I tend to abide

4    by that in most circumstances, but when we get closer to the

5    trial, I'll hear you, Mr. Pericak, if you want to try again to

6    change my mind as to that ruling.  So I'm not making any

7    decisions presently about the indictment going back to the

8    jury.

9            If I do decide that it is going to go back, obviously

10   I will hear from the parties about whether there are any

11   particular redactions that would need to be made for that to

12   happen, so I'm not going to rule on that aspect today.

13           MR. PERCICAK:  May I respond on the co-conspirator

14   statement?

15           THE COURT:  Yes.

16           MR. PERCICAK:  It's not a co-conspirator statement.

17   All you need to do is look at *Grunewald* to see.  The last overt

18   act in the indictment is alleged in 2017.  The FBI does a

19   search 18 months later, and it's during the search that

20   Mr. Mitchell makes the statement that "it's not a kickback, it

21   might be a loan."  Mr. Kacher's place being searched, he says,

22   "I 100 percent felt pressure, these are not loans."  They're

23   diametrically opposed.  But it's 18 months apart.  In *Grunewald*

24   the Court held that where the defendants got the accountant to

25   lie in the grand jury, that was not a co-conspirator statement;

1    that was a statement to conceal a past crime.  And I submit

2    that's what's going on here.  Between the 18-month lapse

3    between the last overt act and this statement, the fact that

4    it's made during this search, I think that to say -- to make a

5    factual finding that it was made during and in furtherance of

6    the conspiracy is clearly erroneous.

7              THE COURT:  Anything else on that?

8              MR. PHELPS:  Your Honor, we define the conspiracy in

9    the indictment as going from July of 2014 through 2018.  We're

10   not required to essentially populate the indictment with acts

11   one per month or two per month to fill the gaps in this period.

12   This statement was made to conceal the conspiracy.  It was made

13   during the time period in the indictment, the time period

14   alleged in the indictment.

15             MR. PERCICAK:  I'll just add that *Grunewald* is the

16   same facts.  That was alleged in the indictment as being part

17   of the conspiracy and the Court still said no go.

18             THE COURT:  All right.  I'm not sure I need to reach

19   that because I am persuaded by the Government's argument that

20   this is not hearsay because it's not being introduced for the

21   truth of the matter asserted.  It is introduced for essentially

22   its falsity, not for its truth.

23             As to the *Bruton* aspect of it, I am not persuaded

24   that it clearly implicates a defendant even to the extent that

25   Mr. Mitchell does not testify and, again, we don't know that

1    yet.  So at this point I'm going to deny -- I'm not ruling on

2    the motion to strike it from the indictment because I'm not

3    sure that we need to worry about that.  I'm not intending that

4    the indictment go back at this point, and if I change my mind

5    about that later, we can talk about redactions then.  I am

6    going to deny what I will interpret as a motion in limine to

7    exclude that piece of evidence and deny that.  So at present,

8    that would be admissible.

9            Okay.  So we've dealt with that.  We have the

10   severance issues which is where I think it makes sense to go

11   next because there's another motion to strike various

12   paragraphs, but that sort of hinges on whether or not the

13   motion to sever is granted.  So I think we should maybe turn

14   now to the severance.

15            There are sort of two aspects to the severance

16   motion.  One has to do with Mr. Kacher's motion to sever

17   certain counts that rely on acts from 2014 which arguably are

18   time barred as to Mr. Kacher.  So why don't we start with that,

19   and then we'll turn to the second aspect of the severance which

20   is the motion to sever the theft and embezzlement counts from

21   the bribery counts that are pending.

22            MR. PERCICAK:  Thank you, Your Honor.  You said

23   arguably but I think it's clear, the statute ran and anything

24   that occurred prior to whatever the date was, January 2015, is

25   barred.  I think the Government acknowledges that --

1       THE COURT:  Right.  I said arguably but that does

2  seem to be that it's uncontested, and I see the Government

3  nodding.

4       MR. PERCICAK:  So here's the point.  I'm going to

5  focus on the jury instructions because that's where I really

6  think we should be a little forward looking, how are they going

7  to figure this out.

8       The Court is somehow going to have to explain to the

9  jury that the Government has to prove an overt act in

10  furtherance of the conspiracy, and three of the six overt acts

11  in 2014 they allege are Kacher endorsed a check to Mitchell.

12  It happened.  There's no doubt that it happened.  The jury when

13  it's instructed, and properly so, will be told in some

14  substance that if you find that Kacher endorsed any one of

15  these three or all three of these in furtherance of the

16  conspiracy, then -- whatever, Mitchell is guilty or what have

17  you.  By the way, jury, if you find that Kacher is not

18  guilty -- and it's like, well, how is a jury supposed to

19  process the fact that an act that Kacher did is going to result

20  in Mitchell being found guilty -- or can result in Mitchell

21  being found guilty but not Kacher being guilty?

22       THE COURT:  Isn't it a little clearer than that

23  though?  Won't the instruction instead say:  In order to find

24  Mr. Kacher guilty, you have to find an overt act that occurred

25  after January, whatever it is, 2015?

1           MR. PERCICAK:  Yes.  How is a jury supposed to

2    process that?  Because they go back and they talk.  They say,

3    wait a minute, why can we do this with Mitchell in 2014; why

4    isn't Kacher just as guilty?  You can instruct them, I'm not

5    contesting that you can figure out a way to instruct them very

6    clearly.  I'm contesting human nature and your discretion and

7    the ability of the jury to really think, oh, this is a

8    technicality, Kacher is going to get off on a technicality here

9    and to then dissipate the Government's burden of proof.

10          I think that it's so clear that the jury cannot be

11   expected to follow an instruction that says Mitchell can be

12   found guilty based on Kacher endorsing a check to him in 2014

13   but Kacher can't be found guilty based on the same act.

14          Then to just say, well, we're just going to find

15   Kacher guilty anyway because he did it and stuff happened in

16   2016, I just think that it dilutes the Government's burden of

17   proof really to the extent that the Court in its discretion

18   ought to order a separate trial with respect to 2014 and

19   strike -- I'm not saying -- the evidence comes in.  That's

20   where Mr. Phelps said, well -- no, the evidence absolutely

21   comes in.  But then when the jury is instructed on overt acts,

22   that's where I think that they're going to have trouble

23   processing and following even the best of instructions.

24          THE COURT:  Thank you.  Mr. Phelps.

25          MR. PHELPS:  So, Your Honor, here's where I think

1   perhaps the distinction between the severance striking motions

2   and the motions in limine to actually admit or exclude the

3   evidence is relevant because Mr. Pericak just made clear in his

4   briefing and now that this evidence is coming in.  It's

5   admissible.  So he seems to have a problem with admissible

6   evidence that could be used to prove both the conspiracy and

7   the substantive bribery charges actually being in the

8   indictment and/or being before the jury for purposes of

9   adjudicating this matter.  I'm not seeing the prejudice there

10  where admissible evidence related to the conspiracy, related to

11  the substantive charges is simply excluded from the text of the

12  indictment or that Mr. Kacher is getting his own separate

13  trial.

14          There's nothing legally that precludes us from

15  including older overt acts.  I think what Mr. Pericak's

16  point -- I think it kind of comes down to two things.  One is

17  he wants to argue that that older conduct is different.  That's

18  the real difference.  The older conduct is checks being

19  endorsed over the same day that the checks are being handed

20  from Mitchell to Kacher and from Kacher to Mitchell.  He wants

21  to argue that that's different.  So there's some upside for him

22  in being able to cast that conduct as different and having all

23  of that in one case in one conspiracy, I think that's really

24  what he's trying to avoid.

25          The second thing, Your Honor, is can the jury

1   understand that two different defendants have two different

2   statute of limitations.  I don't see why they can't.  It can,

3   frankly, be put in the jury instructions, it can be in the

4   verdict form.  Do you find that Mr. Kacher engaged in an overt

5   act after this date?  Do you find that Mr. Mitchell engaged in

6   an overt act after this date?  I don't think that's too

7   complex.

8          THE COURT:  I assume, Ms. Abelson, you're not

9   weighing in on this particular issue?

10         MS. ABELSON:  No, Your Honor.

11         THE COURT:  Go ahead, Mr. Pericak.

12         MR. PERCICAK:  I agree with almost everything

13  Mr. Phelps said.  I do have that tactical reason for wanting it

14  out; there's no doubt about that.  But as far as telling the

15  jury about the statute of limitations, I did cite a case --

16  it's an unpublished Eleventh Circuit case -- but the idea that

17  the jury is going to think "Ah, he's getting off on a

18  technicality," that's just not fair.  That should not be part

19  of anything the jury should have to worry about or consider.

20         I want to say one other thing about two trials and

21  all the burden and stuff.  Mr. Kacher -- the trial of

22  Mr. Kacher is wham, bam and over with.  There's very little.

23  The trial of Mr. Mitchell where, even if you grant the motion

24  to sever the embezzlement counts, they're going to offer 600

25  embezzlements, it's 404(b), I just think the quickest -- by the

1   way, Mr. Kacher is going to be ready in October for trial.  I

2   know the embezzlement makes it a hell of a lot -- pardon me --

3   much more complicated for the federal defenders, and they need

4   more time.  But I think a quick, immediate trial of Mr. Kacher

5   in October solves all the problems and all the issues.

6           Your Honor may very well be right in your rulings,

7   but those are appeal issues and if it comes back, you're just

8   going to have another trial again.  I think that the best

9   course, the prudent course I would recommend and urge is let's

10  try Kacher in October, and then we don't have to worry about

11  all this.

12          THE COURT:  I'll tell you right now I don't have

13  trial dates available in October, so that portion is not going

14  to happen but --

15          MR. PERCICAK:  November, December...

16          MR. PHELPS:  Your Honor, one point because I think it

17  does touch on the other motions to sever and issues related to

18  judicial economy.  If Mr. Kacher's severance is granted and

19  Mr. Mitchell's severance is granted, we're talking about three

20  trials, and I don't think that's in anybody's best interest.

21  So it overlaps the other severance motion but I just wanted to

22  make that point.

23          THE COURT:  Yes, thank you.

24          MR. PERCICAK:  I'm sorry, one other thing.

25  Mr. Kacher also made extensive statements to the FBI which I

1    don't know, I assume -- when I was a prosecutor, I would have

2    offered it; I assume it's going to be offered.  And it

3    implicates Mr. Mitchell.  So you have a *Bruton* problem with his

4    statement.  So I think there's a lot -- we can deal with things

5    right now, okay, that's fine.  But if we look forward and

6    anticipate what's going to happen, there's other problems down

7    the road and I don't think the problem, this three separate

8    trials, I don't think it's a big deal.  I think the Kacher

9    trial is a quick one.  I think that Mitchell -- if Mitchell

10   bribery needs to be severed from Mitchell embezzlement, those

11   are two separate trials that are all relatively quick.

12             THE COURT:  Does anyone else see a *Bruton*, potential

13   *Bruton* issue going the other direction?

14             MR. PHELPS:  Your Honor --

15             THE COURT:  Obviously it wasn't raised in the

16   papers.

17             MR. PHELPS:  It wasn't raised in the papers, Your

18   Honor.  That was done through a proffer with Mr. Kacher, and

19   there can be issues that need to be sorted through when a

20   statement is offered kind of over the protections that were

21   otherwise put in the proffer agreement, and I'm not sure I'm

22   prepared to take a position on that today.

23             MR. PERCICAK:  I'm sorry, I'm not talking about the

24   proffer statement.  I'm talking about the date of the search

25   warrant; that statement where they interviewed him extensively

 1   about the three checks and the endorsements and he explains

 2   what happened and why.  Anyway, I'm -- the reason I bring that

 3   up, Your Honor, is because I do think that, again, even if it's

 4   admitted, you're going to have another limiting instruction.

 5   So you're limited -- you can't think about 2014, and now you

 6   can't think about Mitchell implicating Kacher.  You can't think

 7   about Kacher implicating Mitchell.  A lot of compartmentalizing

 8   going on here and that's why my proposal I think is in the best

 9   interest of everyone.

10           THE COURT:  Okay.

11           MR. PHELPS:  I just prefer a motion so that we have

12   an opportunity to fully brief that and flesh that out.  That's

13   not something Mr. Mitchell's counsel has raised to this

14   point.

15           MS. ABELSON:  Your Honor, our position was exactly

16   what Mr. Phelps said earlier.  We did not believe that it was

17   ripe at this point because it was not clear to us what the

18   Government intended to introduce in a joint trial because of

19   the nature of Mr. Kacher's statements having been made during a

20   proffer session.

21           THE COURT:  Okay.  You're not aware of any statements

22   made outside of the context of a proffer session that might

23   create a *Bruton* problem or at least not now?  It seemed to me

24   Mr. Pericak was not talking about proffer statements, he was

25   talking about something else.

1              MR. PERCICAK:  Correct.

2              MS. ABELSON:  I don't believe there are at this

3     point.

4              MR. PERCICAK:  I'm sorry, he made a statement during

5     the search warrant to the FBI.  That's what I'm talking about.

6     No proffer agreement, nothing.  That's at the Government's

7     election, that's admissible against Mr. Kacher.  Then there's

8     this second statement two months later where I brought him in

9     for a proffer.  I think that one's out.

10             I'm referring, Your Honor, to the first statement

11    that he made to the FBI during the search warrant being

12    executed.

13             MR. PHELPS:  Your Honor, generally that encounter

14    does sound familiar to me.  I don't -- like I said, I think I'd

15    prefer an opportunity to brief that and again, Mr. Mitchell

16    doesn't seem to be concerned about that today.

17             THE COURT:  It seems like maybe it hasn't been

18    highlighted for Mr. Mitchell either.  Why don't we do this

19    then.  I'm going to defer ruling on the motion to sever the two

20    defendants for trial on the conspiracy count, but I'm going to

21    direct the parties to go back and take a look at this issue

22    because this is obviously important for trial scheduling, and I

23    need to tee this up sooner rather than later.

24             I will say that on the issue about the 2014 versus

25    the other acts, I am of the view that a limiting instruction

1    will suffice.  I am not persuaded that that particular issue

2    warrants severing these two defendants as to the conspiracy

3    trial.  But I certainly want to hear more about this potential

4    *Bruton* issue.  To the extent it is an issue, I want to assess

5    that before I make a final determination as to whether the

6    trials should be severed or not.

7         So I ask the parties to quickly take a look at that

8    and confer and let me know and then I can, depending on the

9    outcome of that, either order further briefing or make a

10   determination that the conspiracy trial will proceed forward

11   jointly.

12        Okay.  Now we need to hear on the motion to sever the

13   theft and embezzlement counts from the conspiracy.

14   Ms. Abelson.

15        MS. ABELSON:  Thank you, Your Honor.  Your Honor,

16   Mr. Phelps just stated in a different context but that no one

17   would be served by having three separate trials.  That is not

18   the case.  Mr. Mitchell would be served by having separate

19   trials.  We are here today to discuss that.

20        Our motion is relatively simple and I know that the

21   Government filed a consolidated response which conflated some

22   of the different issues, but our motion was first under Rule

23   8(a) which sets forth three possible grounds for joinder.  Our

24   primary argument is that the counts -- that two sets of counts

25   against Mr. Mitchell, the bribery counts and the embezzlement

1    counts, have been misjoined under Rule 8(a).

2            There are three possible reasons for misjoinder under

3    Rule (a).  They have to be part of the same act or transaction

4    which is not the case here; they have to be the same or similar

5    character which the Government has conceded they are not; or

6    they have to be part of a common scheme or plan which is where

7    the Government has focused their argument here.

8            A pretrial motion for relief from misjoinder under

9    Rule 8 is determined on the face of the indictment, that the

10   Court has to consider the indictment only.  In this case I

11   think the indictment is really instructive on the ways in which

12   these two sets of counts are not part of the same common scheme

13   or plan.

14           If the Court looks at the indictment, pages 1 through

15   16 set forth the factual allegations that support the alleged

16   bribery conspiracy.  Pages 22 through 24 set forth a separate

17   alleged scheme related to the embezzlement allegations.

18           Paragraphs 1 through 28, the Government incorporated

19   by reference into the second alleged scheme.  But paragraphs 29

20   through 36, which set forth really the meat of the allegations

21   that are contested in this case related to the alleged bribery

22   scheme, it's all of the substantive proof the Government would

23   have to make related to the alleged bribery scheme are not

24   incorporated by reference into the second scheme that's set out

25   on pages 22 through 24.  So by the Government's own drafting in

1   this indictment, they've illustrated why these are not part of

2   a common scheme or plan.

3          Paragraphs 1 through 28 which are incorporated by

4   reference are not contested.  They set forth background

5   incorporation about Maryland Broadband Corporation [sic].  They

6   set forth information about Mr. Mitchell's position at Maryland

7   Broadband, about the existence of the federal contracts.  None

8   of that is in dispute.  All of that essentially can be

9   stipulated at either trial.  It's really the only paragraphs

10  that are in dispute are the ones that are not incorporated from

11  one alleged scheme to the other.  So it illustrates why they

12  are not the same.

13         The time frames are also different.  The Government

14  argues that they are the same but they are not.  In the

15  indictment, the facts alleged with respect to the bribery

16  scheme include acts from 2014 to 2017.  The facts alleged in

17  the alleged embezzlement scheme are from 2016 through 2019.

18  Various cases that we cited in our pleadings and from around

19  the country make clear that joinders are only proper under this

20  theory of it being a common scheme or plan where the proof of

21  one set of claims constitutes substantial proof of another.  In

22  this case, that is just not the case between these two sets of

23  claims.

24         The offenses share no elements except the existence

25  of the federal -- receipt of federal funds which is not in

1    dispute.  And we also cited a number of other fraud cases that

2    illustrated ways in which courts have parsed this where there

3    are some overlapping background facts where someone is --

4    where, for example, there are two frauds that occur as are

5    alleged in this case, with someone who works for a single

6    company, a tax fraud and some separate fraud, but there's no

7    clear connection between the two sets of allegations.  And

8    courts have severed those cases.  The mere fact that

9    Mr. Mitchell was the CEO of Maryland Broadband during both sets

10   of alleged offenses is not enough to suggest they are part of a

11   common scheme or plan.

12            So really in this case the only way that the

13   Government can allege that there's a common scheme or plan, as

14   we set forth in our reply, is by using one set of allegations

15   as propensity evidence to prove the other set of allegations.

16   So it's really a boot-strapping issue here where they're trying

17   to show that Mr. Mitchell must have committed one set of

18   offenses because they allege that he has committed the other

19   set of offenses, and the defenses that we would put on --

20   although I do not believe the Court should look outside the

21   indictment at this stage -- would be different as to the two

22   separate accounts.

23            They involve different players.  The embezzlement

24   counts are related basically entirely to Mr. Kacher -- I'm

25   sorry, the bribery counts are related entirely to

1   Mr. Mitchell's relationship with Mr. Kacher.  The embezzlement

2   counts involve Mr. Mitchell's relationships with other

3   employees at Maryland Broadband Cooperative, MdBC, and

4   Mr. Mitchell's relationships with the board of directors at

5   MdBC and they don't involve Mr. Kacher at all.  The only real

6   connection between this is Mr. Mitchell and the Maryland -- and

7   MdBC.

8            So for those reasons, we believe that severances of

9   the two sets of counts are proper.

10           THE COURT:  All right.  Mr. Phelps, do you wish to be

11  heard?

12           MR. PHELPS:  Yes, Your Honor.  I think my arguments

13  are going to be very duplicative of my response to Mr. Kacher's

14  forthcoming argument as well.  First of all, I wanted to read

15  from the indictment sections from both the bribery section and

16  the embezzlement section.  It says:  The object of the

17  conspiracy and scheme of artifice to defraud was for Mitchell

18  to secretly use his official position at MdBC to enrich himself

19  by soliciting payments, gifts and other things, but it's an

20  object of the conspiracy for him to enrich himself.

21           If we go to the theft counts, the theft count says:

22  Mitchell was authorized to use an MdBC business credit card for

23  MdBC business.  And in the next paragraph it says:  Mitchell,

24  however, frequently used his MdBC credit card for personal

25  purchases.  Mitchell also used his MdBC checks to pay for

1    personal purchases.  So I think the indictment actually does

2    essentially allege a common scheme or plan in both sections

3    whereby Mitchell is using his position at MdBC to personally

4    enrich himself.

5         As a factual matter, Your Honor, I think we've shown

6    in the evidence -- I think we called it a flurry of activity by

7    Mr. Mitchell in which he personally enriches himself.  In some

8    instances, he takes money directly from the company.  In other

9    instances, it passes to Mr. Kacher before it's kicked back to

10   Mr. Mitchell.  But I think there's -- in terms of the

11   commonality of the conduct, I think it's -- one is a direct

12   payment to him from MdBC, and one is an indirect payment to him

13   from MdBC.

14        I think the evidence of both is admissible under

15   404(b) against the other for essentially those exact reasons,

16   and so I don't think it makes sense to have separate trials

17   when the evidence would be admissible in both cases.

18        There's the text of 8(a) and there's the text of

19   8(b).  We'll talk about 8(b), Your Honor, but both -- if you

20   look at the cases that talk about both, it essentially comes

21   down to two considerations, prejudice by the joinder and

22   judicial efficiency.  I don't think that there's any reason to

23   sever these trials.  It would involve common witnesses.  The

24   former CFO is going to have to testify at both.  A forensic

25   accountant for the FBI would have to testify at both.  A

1    representative of Maryland Broadband would likely have to

2    testify at both.  From a judicial economy standpoint, that's

3    not a good use of the court's resources.

4          Again, from a prejudicial standpoint, I'm not sure

5    how Mr. Mitchell is prejudiced by these two charges being

6    lumped together when I think the evidence is admissible for all

7    purposes.

8          There was one issue related to timing, Your Honor.

9    The theft charges, with the exception of I think four months,

10   completely overlap with the bribery conspiracy, so I think

11   there is a significant overlap in time as well alleged in the

12   indictment.

13         THE COURT:  Thank you.  Mr. Pericak, did you wish to

14   weigh in?

15         MR. PERCICAK:  Yes, briefly because most of it has

16   already been said.  Mr. Phelps mentioned it's going to be

17   admissible as 404(b), but in our papers we point out we have a

18   nice Ninth Circuit case that says, surprisingly to me, that the

19   Ninth Circuit is on the side of the Government, that if it's

20   admissible under 404(b), that might make it admissible under

21   8(a) but not sufficient for joinder under Rule 8(b).  That's

22   the *Satterfield* case.

23         The point is as to Mr. Kacher, this evidence is not

24   admissible.  8(b) is a stricter statute or rule than 8(a), and

25   I just don't think that they meet the requirements.  First of

1    all, I agree with Ms. Abelson, it's not pled in the indictment.

2    I heard what Mr. Phelps read.  That still doesn't sound like

3    it's pleading common scheme or plan in the indictment.  But

4    even all the justification for it doesn't seem to me to show a

5    common scheme or plan sufficient to make it to be joined.

6              I just think that the evidence in the two trials is

7    just going to be different.  404(b) aside, which that's one of

8    my complaints about severance is if you're going to admit

9    404(b) evidence against Mr. Mitchell, it's 600 embezzlements.

10   How's is that going to make Mr. Kacher look?  I just think the

11   prejudice from that is very strong.

12             In any event, the bottom line is I don't think it's

13   alleged in the indictment as it's required to be, although the

14   Fourth Circuit hasn't said that.  Five circuits have said it

15   has to be, two have said it doesn't have to be.  But even if

16   you take the extra factors that Mr. Phelps has pointed out, I

17   just don't think it shows a common scheme or plan sufficient to

18   comply with Rule 8(b).

19             MR. PHELPS:  Your Honor --

20             THE COURT:  Let's let Ms. Abelson go one more time

21   and then I'll hear from you.

22             MS. ABELSON:  Your Honor, may I respond to

23   Mr. Phelps?

24             THE COURT:  Sure.

25             MS. ABELSON:  Your Honor, Mr. Phelps has said

1      repeatedly in a conclusory manner, both in his briefing and

2      here today, that this would be admissible 404(b).  We have laid

3      out reasons why we do not believe the evidence as to the two

4      sets of counts would be admissible 404(b), and we can't even

5      respond to the Government's arguments because they haven't

6      articulated a theory under that rule.

7                In addition, a number of the Government's arguments

8      about judicial economy, the Fourth Circuit and various courts

9      around the country have articulated that the questions of

10     judicial economy are not relevant in terms of determining

11     whether or not counts are related as being part of a common

12     scheme or plan.  Those are other issues that the Government has

13     not raised in terms of explaining why they believe this was

14     joined properly.  Those are issues that are relevant to the

15     Court's discretion under Rule 14 which is our secondary

16     argument here, although we do not believe that the counts are

17     properly joined and severance is mandatory if they are

18     misjoined.

19               But I do want to respond to this idea of common

20     witnesses here.  Two of the witnesses that the Government have

21     listed today are law enforcement witnesses who investigated

22     this case.  The fact that they might have to testify in two

23     separate trials is not an issue of judicial economy.  The

24     Fourth Circuit has made very clear that just because facts may

25     have been developed during the same investigation by the same

1   law enforcement officers does not mean that they are properly

2   joined.  So the fact that two law enforcement officers would

3   have to come and testify twice is just part of the job.  It's

4   not something that would require -- would defeat our relief

5   from misjoinder.

6            I do want to discuss briefly *United States vs.*

7   *Hawkins* which is one of the key issues in the Fourth Circuit --

8   key cases in the Fourth Circuit on Rule 8(a).  The facts in

9   *Hawkins* were that there was an investigation into an armed

10  carjacking and two weeks later, the defendant was arrested and

11  found to be in possession of a firearm that was different than

12  the one that was alleged to have been used in the armed

13  carjacking.  It's hard to think about that type of violent

14  crime in the same context as the allegations here.  But

15  basically the argument that Mr. Phelps has made, that by just

16  alleging that Mr. Mitchell used his position at MdBC to enrich

17  himself and that that is the link that makes this a common

18  scheme or plan is essentially the same as saying that

19  Mr. Hawkins had access to firearms.

20           The Court in the Fourth Circuit said that was not a

21  part of a common scheme or plan; that the fact that Mr. Hopkins

22  possessed a firearm or was alleged to have possessed a firearm

23  two weeks later, that that felon-in-possession count should be

24  severed from the earlier carjacking counts and that joinder was

25  impermissible.  So for the same reasons, joinder is

1   impermissible here.

2          THE COURT:  Thank you.  Mr. Phelps.

3          MR. PHELPS:  Yes, Your Honor.  Three points.  First

4   of all, it is our position that this evidence could be

5   admissible under Rule 404(b), but I don't want to concede that

6   this evidence isn't intrinsic evidence of Mr. Mitchell's

7   conduct.  Again, when you overlay everything on top of each

8   other, I don't see he's committing bribery one day and theft

9   another and bribery one day and theft another.  This is all

10  part of kind of who he was and what he did as CEO of Maryland

11  Broadband.

12         I want to talk about, one thing I didn't address was

13  the prejudice to Mr. Kacher by the joinder of the bribery and

14  theft trials.  This is both a prejudice argument and a judicial

15  economy argument, Your Honor.  Once we're all here for one

16  trial, the added evidence associated with the theft counts is

17  minimal because the witness is already here, they're already

18  going to be testifying, and we just need to ask a few more

19  questions of that witness about the defendant's conduct.  We're

20  not going to be putting on evidence of 600 isolated

21  transactions of theft.  That's not what we would do.

22         So, again, from a prejudice standpoint and from a

23  judicial economy standpoint, I don't think Mr. Kacher is going

24  to be prejudiced if once a Maryland Broadband representative is

25  already on the stand or once the former CEO is on the stand,

1    having 15 or 20 more minutes of questions particularly related

2    to the theft, I think the jury is going to be able to hear that

3    additional evidence and not hold it against Mr. Kacher.

4            Then whether it's both -- first of all, if you look

5    at the case law related to 8(a), it's very -- courts don't

6    apply either 8(a) or 8(b) rigidly.  There's a lot of

7    flexibility given to courts to weigh the competing interests,

8    including judicial economy.  I'll read from a Fourth Circuit --

9    excuse me, a District of Maryland case interpreting 8(b) and

10   quoting -- which is the more stringent case:  8(b) is still

11   quite broad.  Rule 8(b)'s use of the word transaction is,

12   quote, "not a technical term nor is it a word of art."  Quote,

13   "transaction frequently involves the balancing of conflicting

14   interests, speed, efficiency and convenience in the functioning

15   of the federal judicial machinery against the right of the

16   accused to a fair trial without any substantial prejudice to

17   that right occasioned by the joinder of the offenses and/or

18   defendants."

19           So 8(a) says what it says, 8(b) says what it says,

20   but I think at the end of the day, it still comes down to these

21   hallmarks of prejudice and judicial efficiency, and I think

22   both of those factors weigh in favor of a single trial.

23           THE COURT:  All right.  There's obviously a lot of

24   different factors to consider here.  I will say at the outset,

25   I do think that it is appropriate to sever the theft and

1    embezzlement from the conspiracy offenses.  I reached that

2    conclusion not so much on an 8(a) theory, although I'm not

3    necessarily persuaded that a common scheme is present here.  I

4    readily concede that personal gain appears to be the motive in

5    both circumstances, but I don't think in the context of sort of

6    theft and fraud expenses that just having personal gain for the

7    motive is enough to transform it into a common scheme.  There's

8    also some temporal overlap.  But, again, it seems to me sort of

9    to be two things that are going on at the same time.

10          I am more persuaded by Mr. Kacher's 8(b) argument

11   which I do think that, again, it doesn't seem to be part of the

12   same act or transaction.  It is clearly distinct conduct.  The

13   evidence is largely going to be different, although I take the

14   Government's point that it may not be extensive evidence as to

15   the fraud and embezzlement scheme which, frankly, means

16   hopefully that would be a shorter sort of a trial on its own.

17   But I do think that there is reason to believe that it would be

18   prejudicial to Mr. Kacher to try them together and that I don't

19   think this is part of the same act or transaction, even looking

20   broadly at the same act or transaction.

21          I also do think with respect to Mr. Mitchell that he

22   has a propensity argument and prejudice argument to be made

23   under Rule 14 which outweighs the judicial efficiency concerns

24   of having a joint trial.  I think that this is a circumstance

25   in which the evidence could be much stronger as to one set of

1    offenses than the other and that the potential message to the

2    jury that this was a defendant who was generally abusing his

3    role is one that could create prejudice to Mr. Mitchell if

4    these offenses were tried together.

5            I am not at this point ruling on the 404(b)

6    argument, although obviously I would still have probably

7    similar prejudice concerns, but I'm not making a ruling until

8    that issue is briefed.  And now that I've said it will be

9    separate trials, I will be happy to entertain a 404(b) motion

10   when we can flesh those issues out more specifically.

11   Obviously, it wasn't raised yet because we didn't know that it

12   was going to be separate trials at this point.  But my intent

13   at this point, subject to the *Bruton* argument that may yet be

14   raised, is that we would have two trials in this matter; one,

15   the fraud and embezzlement trial as to Mr. Mitchell and, two,

16   the conspiracy trial jointly against both defendants.

17           Have I missed anything with respect to the severance

18   arguments?

19           MR. PHELPS:  Nothing, Your Honor.

20           MS. ABELSON:  No, Your Honor.

21           MR. PERCICAK:  No, Your Honor.

22           THE COURT:  Let me ask you this and, again, I know

23   things could change based on the *Bruton* argument.  Do the

24   parties have a sense of the length of those respective trials

25   assuming that they go forward the way I just laid it out?

1          MR. PHELPS:  Your Honor, I think -- does Your Honor

2     sit on Fridays?

3          THE COURT:  Typically I do sit on Fridays but it kind

4     of depends on the week we find.  So the easiest thing for me is

5     if you give me an estimate of trial days, and I would look for

6     an appropriate window.

7          MR. PHELPS:  Considering jury selection, openings and

8     closings, I would ask for eight days, eight trial days.

9          THE COURT:  For which trial?

10         MR. PHELPS:  For the bribery trial.

11         THE COURT:  The conspiracy.

12         MR. PHELPS:  Conspiracy, yes.

13         THE COURT:  And what about the embezzlement, theft

14    trial?

15         MR. PHELPS:  Probably five days.  Still have got to

16    pick a jury.

17         THE COURT:  Does that sound -- I don't know if that

18    took into account any defense case or that was just the

19    Government's proof --

20         MR. PHELPS:  I would say that's largely just the

21    Government's case, Your Honor, yes.

22         MR. PERCICAK:  Your Honor, I have a fairly developed

23    witness list.  I think I have six witnesses, two days at the

24    most.  I'm assuming -- making some assumptions about who

25    Mr. Phelps is going to call.

1          THE COURT:  Sure.  I'm not going to hold anyone to

2    the specific timing.  I'm trying to get a sense of rough

3    estimates.

4          MS. ABELSON:  We would also estimate putting on a

5    case, although it's not entirely clear, one to two days.

6          THE COURT:  For both trials or just for the

7    conspiracy?

8          MS. ABELSON:  For both trials.

9          THE COURT:  Obviously we cannot schedule the bribery

10   trial at this point because we still need to get to the bottom

11   of this *Bruton* issue, and I don't want to go setting a trial

12   date and then deciding that we have to sever into more trials

13   and doing something that's --

14         MR. PHELPS:  Your Honor, would it make sense to

15   schedule a bribery trial with the expectation that it's either

16   going to be a one-defendant or two-defendant trial, but at

17   least we get one on the calendar?

18         THE COURT:  We can do that, although the length of it

19   may change, so we would have -- looks like we would be needing

20   to find a three-week window if it is all together and

21   potentially would be two-week windows if they were separate.

22         MS. ABELSON:  Your Honor, I think it would be best

23   for the Office of the Federal Public Defender, for some

24   administrative reasons, to set a conference call to determine

25   this sometime in the next several days if we can.

1          THE COURT:  That's fine.  I will tell you that right

2    now, my fall is booked.  So I don't have dates until after the

3    first of the year, so we're looking at dates in early 2024, so

4    I'll let you know that at the front end.  I do have some other

5    criminal trials that are already in that window.  Again, you

6    guys are looking for, at this point, a three-week window which

7    can be tricky to find with intermittent trials dispersed

8    around.

9          Why don't we do this.  We can ask the parties to

10   jointly confer to look for three-week windows that work for all

11   of you, and then we can have a conference call and you can run

12   the few three-week windows that you find by me, and we can

13   compare calendars.  Does that make sense?

14         MR. PHELPS:  Yes, Your Honor.

15         MS. ABELSON:  Yes, Your Honor.

16         THE COURT:  Then I guess we would need a slightly

17   more than one-week window for the embezzlement theft trial too,

18   and perhaps the Government and public defender can confer on

19   some of those which will probably be easier to find.

20         MR. PHELPS:  Yes, Your Honor.

21         MR. PERCICAK:  I don't want to be a fly in the

22   ointment on scheduling, but I'm leaving for Europe on Monday

23   for two weeks.

24         MR. PHELPS:  I start a trial on Monday as well.

25         MR. PERCICAK:  I'm just talking about our getting

1  together.  If we could do it this afternoon, that would be

2  great.  Otherwise, it's going to be two weeks before I can even

3  talk to you.

4          MR. PHELPS:  I think it's more for them than it is

5  for me.

6          MS. ABELSON:  It is for us.  It's not entirely clear

7  what our trial team will be.

8          THE COURT:  Okay.  Let me say this.  I am not in a

9  particular hurry to get an answer on this, although I know some

10  other people have an interest in getting this done quickly.

11  Why don't I ask you to confer this afternoon.  If the answer is

12  we need to defer this until after Mr. Pericak gets back from

13  vacation and Mr. Phelps gets out of trial before we can get

14  these windows, just let my chambers know, and we'll wait to

15  hear from you when you say we can hear from you, knowing that

16  we're not foregoing any fall dates because I don't have any so

17  we're looking for after the first of the year anyway.

18          I'll just ask you to confer at the conclusion of this

19  proceeding, figure out a timetable for at least getting me some

20  windows, and then we'll go from there.  Does that make sense to

21  everybody?

22          MR. PHELPS:  Yes, Your Honor.

23          MS. ABELSON:  Yes, Your Honor.

24          MR. PERCICAK:  Yes.

25          THE COURT:  Have I missed anything with respect to

1  the motions?  I guess to formalize the rulings I have made, I

2  have granted ECF 57 which is Mr. Mitchell's motion to sever the

3  theft counts.  I have granted Mr. Kacher's motion seeking the

4  return of his seized items.  Then with respect to Mr. Kacher's

5  motion ECF 59 which requested several different forms of

6  relief, I think at this point I've granted in part and denied

7  in part and deferred in part on that motion and it's sort of

8  awaiting final disposition.

9           Does that comport with everybody's understanding?

10          MR. PHELPS:  Yes, Your Honor.

11          MR. PERCICAK:  Yes, Your Honor.

12          THE COURT:  All right.  Is there anything else that

13  we need to address this afternoon?

14          MR. PHELPS:  Nothing from the Government.  Thank you,

15  Your Honor.

16          MS. ABELSON:  Nothing from Mr. Mitchell.

17          MR. PERCICAK:  Nothing from Mr. Kacher.

18          THE COURT:  Thank you.  I'll look forward to hearing

19  from you at least as to the timing by which I might get some

20  dates from you.

21          THE CLERK:  All rise.  This Court stands in recess.

22       (Proceedings concluded at 12:24 p.m.)

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2              I, Patricia G. Mitchell, Registered Merit Reporter,

3    Certified Realtime Reporter, in and for the United States

4    District Court for the District of Maryland, do hereby certify,

5    pursuant to 28 U.S.C. § 753, that the foregoing is a true and

6    correct transcript of the stenographically-reported proceedings

7    held in the above-entitled matter and the transcript page

8    format is in conformance with the regulations of the Judicial

9    Conference of the United States.

10             Dated this 10th day of October 2023.

11

12                          *Patricia G Mitchell*

13         _____
                   Patricia G. Mitchell, RMR, CRR
14                 Federal Official Reporter

15

16

17

18

19

20

21

22

23

24

25

**< Dates >.**
**December 6** 7:3.
**January 2015,** 11:24.
**January,** 12:25.
**July** 10:9.
**July 14, 2023** 1:18.
**May** 9:13.
**November,** 16:15.
**October** 16:1, 16:5.
**October 2023.** 39:10.
**October,** 16:10, 16:13.
.
.
**< 1 >.**
**1** 4:5, 21:14, 21:18, 22:3.
**1-cr-00090-sag** 1:10.
**100** 1:40, 9:22.
**10th** 39:10.
**11** 2:3.
**1101** 1:47.
**12** 38:22.
**14** 28:15, 32:23.
**15** 31:1.
**16** 21:15.
**18** 9:19, 9:23.
**18-month** 10:2.
**1:** 1:10, 2:7.
.
.
**< 2 >.**
**20** 31:1.
**20036-4359** 1:48.
**2014** 10:9, 11:17, 12:11, 13:3, 13:12, 13:18, 18:5, 19:24, 22:16.
**2015** 12:25.
**2016** 13:16, 22:17.
**2017** 9:18, 22:16.
**2018** 7:17, 10:9.
**2019** 22:17.
**2024** 36:3.
**21-cr-90** 2:7.
**21201** 1:33, 1:41.
**22** 21:16, 21:25.
**24** 21:16, 21:25, 38:22.
**28** 21:18, 22:3, 39:5.
**29** 21:19.
.
.

**< 3 >.**
**302** 4:22.
**31** 2:3.
**35** 4:5.
**36** 1:32, 21:20.
.
.
**< 4 >.**
**404(b** 15:25, 25:15, 26:17, 26:20, 27:7, 27:9, 28:2, 28:4, 30:5, 33:5, 33:9.
**450** 1:47.
**4th** 1:32.
.
.
**< 5 >.**
**57** 38:2.
**58** 3:25.
**59** 38:5.
.
.
**< 6 >.**
**600** 15:24, 27:9, 30:20.
.
.
**< 7 >.**
**753** 39:5.
**7C** 1:24.
.
.
**< 8 >.**
**8** 21:9.
**8(a** 20:23, 21:1, 25:18, 26:21, 26:24, 29:8, 31:5, 31:6, 31:19, 32:2.
**8(b** 25:19, 26:21, 26:24, 27:18, 31:6, 31:9, 31:10, 31:19, 32:10.
**8(b)** 31:11.
.
.
**< 9 >.**
**9th** 1:40.
**[sic]** 22:5.
.
.
**< A >.**
**A.** 1:30.
**a.m.** 2:3.

**ABELSON** 1:37, 2:12, 2:13, 6:9, 8:12, 8:14, 8:21, 15:8, 15:10, 18:15, 19:2, 20:14, 20:15, 27:1, 27:20, 27:22, 27:25, 33:20, 35:4, 35:8, 35:22, 36:15, 37:6, 37:23, 38:16.
**abide** 9:3.
**ability** 13:7.
**able** 2:22, 14:22, 31:2.
**above-entitled** 39:7.
**absence** 2:22.
**absolutely** 13:20.
**abusing** 33:2.
**access** 3:8, 29:19.
**account** 34:18.
**accountant** 9:24, 25:25.
**accounts** 23:22.
**accurate** 3:18.
**accused** 31:16.
**acknowledges** 11:25.
**act** 9:18, 10:3, 12:9, 12:19, 12:24, 13:13, 15:5, 15:6, 21:3, 32:12, 32:19, 32:20.
**activity** 25:6.
**acts** 10:10, 11:17, 12:10, 13:21, 14:15, 19:25, 22:16.
**actually** 8:23, 14:2, 14:7, 25:1.
**add** 5:10, 10:15.
**added** 30:16.
**addition** 28:7.
**additional** 31:3.
**additionally** 8:6.
**address** 30:12, 38:13.
**adequate** 3:10, 3:17.
**adjudicating** 14:9.
**administrative** 35:24.
**admissible** 4:16, 5:6, 11:8, 14:5, 14:10, 19:7, 25:14, 25:17, 26:6, 26:17, 26:20, 26:24, 28:2, 28:4, 30:5.
**admit** 14:2, 27:8.
**admitted** 18:4.
**afternoon** 37:1, 37:11,

38:13.
**agree** 15:12, 27:1.
**agreement** 17:21, 19:6.
**Ah** 15:17.
**ahead** 15:11.
**allegation** 6:15, 8:22.
**allegations** 6:24, 21:15, 21:17, 21:20, 23:7, 23:14, 23:15, 29:14.
**allege** 12:11, 23:13, 23:18, 25:2.
**alleged** 9:18, 10:14, 10:16, 21:15, 21:17, 21:19, 21:21, 21:23, 22:11, 22:15, 22:16, 22:17, 23:5, 23:10, 26:11, 27:13, 29:12, 29:22.
**alleging** 29:16.
**allow** 4:9, 5:9.
**almost** 15:12.
**already** 26:16, 30:17, 30:25, 36:5.
**although** 5:5, 23:20, 27:13, 28:16, 32:2, 32:13, 33:6, 35:5, 35:18, 37:9.
**America** 1:5, 2:7.
**analysis** 6:2.
**and/or** 14:8, 31:17.
**answer** 37:9, 37:11.
**anticipate** 17:6.
**anybody** 5:22, 16:20.
**Anyway** 13:15, 18:2, 37:17.
**apart** 9:23.
**appeal** 16:7.
**appearance** 2:18, 2:20.
**appearing** 2:14.
**appears** 32:4.
**apply** 31:6.
**appropriate** 3:20, 31:25, 34:6.
**arguably** 11:17, 11:23, 12:1.
**argue** 14:17, 14:21.
**argues** 22:14.
**argument** 5:17, 10:19, 20:24, 21:7, 24:14, 28:16, 29:15, 30:14,

*July 14, 2023 Motions Hearing*

30:15, 32:10, 32:22,
  33:6, 33:13, 33:23 .
**arguments** 24:12, 28:5,
  28:7, 33:18 .
**armed** 29:9, 29:12 .
**around** 22:18, 28:9,
  36:8 .
**arrested** 29:10 .
**art.** 31:12 .
**articulated** 28:6, 28:9 .
**artifice** 24:17 .
**aside** 27:7 .
**aspect** 9:12, 10:23,
  11:19 .
**aspects** 11:15 .
**asserted** 10:21 .
**assertion** 4:15, 4:16 .
**assess** 20:4 .
**Assistant** 2:9 .
**associated** 3:12,
  30:16 .
**assume** 3:15, 5:14, 15:8,
  17:1, 17:2 .
**assuming** 33:25,
  34:24 .
**assumption** 8:15 .
**assumptions** 34:24 .
**Attorney** 1:31 .
**Attorneys** 2:9, 6:6 .
**authorized** 24:22 .
**available** 16:13 .
**Avenue** 1:47 .
**avoid** 14:24 .
**awaiting** 38:8 .
**aware** 18:21 .
.
.
**< B >** .
**back** 6:17, 6:23, 7:10, 8:16,
  8:17, 8:25, 9:2, 9:7, 9:9,
  11:4, 13:2, 16:7, 19:21,
  25:9, 37:12 .
**background** 22:4,
  23:3 .
**balancing** 31:13 .
**Baltimore** 1:17, 1:33,
  1:41 .
**bam** 15:22 .
**barred** 11:18, 11:25 .
**based** 13:12, 13:13,

33:23 .
**basically** 23:24, 29:15 .
**behalf** 2:10, 2:13, 2:17 .
**believe** 18:16, 19:2, 23:20,
  24:8, 28:3, 28:13, 28:16,
  32:17 .
**best** 3:17, 13:23, 16:8,
  16:20, 18:8, 35:22 .
**better** 4:7 .
**big** 17:8 .
**bit** 3:3 .
**board** 24:4 .
**booked** 36:2 .
**boot-strapping** 23:16 .
**bottom** 27:12, 35:10 .
**bribery** 11:21, 14:7, 17:10,
  20:25, 21:16, 21:21,
  21:23, 22:15, 23:25,
  24:15, 26:10, 30:8, 30:9,
  30:13, 34:10, 35:9,
  35:15 .
**brief** 18:12, 19:15 .
**briefed** 33:8 .
**briefing** 14:4, 20:9,
  28:1 .
**briefly** 3:22, 4:10, 26:15,
  29:6 .
**bring** 18:2 .
**broad** 31:11 .
**Broadband** 22:5, 22:7,
  23:9, 24:3, 26:1, 30:11,
  30:24 .
**broadly** 32:20 .
**brought** 19:8 .
**Bruton** 4:20, 5:7, 5:8, 7:22,
  7:23, 8:2, 8:4, 8:6,
  10:23, 17:3, 17:12,
  17:13, 18:23, 20:4,
  33:13, 33:23, 35:11 .
**burden** 13:9, 13:16,
  15:21 .
**business** 24:22, 24:23 .
.
.
**< C >** .
**C.** 1:45, 39:5 .
**calendar** 35:17 .
**calendars** 36:13 .
**call** 2:5, 34:25, 35:24,
  36:11 .

**called** 25:6 .
**Calling** 2:6 .
**Cara** 1:38, 2:13 .
**card** 24:22, 24:24 .
**carjacking** 29:10, 29:13,
  29:24 .
**Case** 2:5, 2:7, 2:25, 3:7,
  4:13, 6:23, 6:25, 7:2,
  7:4, 8:3, 14:23, 15:15,
  15:16, 20:18, 21:4,
  21:10, 21:21, 22:22,
  23:5, 23:12, 26:18,
  26:22, 28:22, 31:5, 31:9,
  31:10, 34:18, 34:21,
  35:5 .
**cases** 4:13, 4:14, 4:18, 7:5,
  7:6, 8:4, 22:18, 23:1,
  23:8, 25:17, 25:20,
  29:8 .
**cast** 14:22 .
**CEO** 23:9, 30:10,
  30:25 .
**certain** 11:17 .
**certainly** 3:6, 20:3 .
**CERTIFICATE** 39:1 .
**Certified** 39:3 .
**certify** 39:4 .
**CFO** 25:24 .
**chambers** 37:14 .
**change** 9:6, 11:4, 33:23,
  35:19 .
**character** 21:5 .
**characterization** 8:23 .
**charges** 14:7, 14:11, 26:5,
  26:9 .
**Charles** 1:32, 1:40 .
**check** 3:22, 12:11,
  13:12 .
**checked** 3:16 .
**checks** 4:23, 4:24, 14:18,
  14:19, 18:1, 24:25 .
**Circuit** 15:16, 26:18, 26:19,
  27:14, 28:8, 28:24, 29:7,
  29:8, 29:20, 31:8 .
**circuits** 27:14 .
**circumstance** 32:24 .
**circumstances** 9:4,
  32:5 .
**cite** 15:15 .
**cited** 4:12, 4:13, 22:18,

23:1 .
**civil** 7:4 .
**claims** 22:21, 22:23 .
**clarify** 6:20 .
**clause** 4:4, 8:9 .
**clear** 4:19, 5:7, 11:23,
  13:10, 14:3, 18:17,
  22:19, 23:7, 28:24, 35:5,
  37:6 .
**clearer** 12:22 .
**clearly** 4:21, 5:4, 5:21,
  10:6, 10:24, 13:6,
  32:12 .
**CLERK** 38:21 .
**client** 5:25 .
**closer** 9:4 .
**closings** 34:8 .
**co-conspiracy** 7:15 .
**co-conspirator** 9:13, 9:16,
  9:25 .
**co-defendant** 7:24 .
**comes** 13:19, 13:21, 14:16,
  16:7, 25:20, 31:20 .
**coming** 14:4 .
**committed** 23:17,
  23:18 .
**committing** 30:8 .
**common** 21:6, 21:12, 22:2,
  22:20, 23:11, 23:13,
  25:2, 25:23, 27:3, 27:5,
  27:17, 28:11, 28:19,
  29:17, 29:21, 32:3,
  32:7 .
**commonality** 25:11 .
**company** 23:6, 25:8 .
**compare** 36:13 .
**compartmentalizing**
  18:7 .
**competing** 31:7 .
**complaints** 27:8 .
**completely** 26:10 .
**complex** 6:23, 7:4,
  15:7 .
**complicated** 16:3 .
**comply** 27:18 .
**comport** 38:9 .
**Computer-aided** 2:1 .
**conceal** 7:16, 10:1,
  10:12 .
**concealing** 7:18 .

**concede** 30:5, 32:4 .
**conceded** 21:5 .
**concern** 3:7, 3:13 .
**concerned** 19:16 .
**concerns** 32:23, 33:7 .
**concluded** 38:22 .
**conclusion** 32:2, 37:18 .
**conclusory** 28:1 .
**conduct** 7:18, 7:19, 8:3, 14:17, 14:18, 14:22, 25:11, 30:7, 30:19, 32:12 .
**confer** 20:8, 36:10, 36:18, 37:11, 37:18 .
**Conference** 35:24, 36:11, 39:9 .
**confession** 7:24, 7:25 .
**conflated** 20:21 .
**conflicting** 31:13 .
**conformance** 39:8 .
**confrontation** 4:4, 8:9 .
**Connecticut** 1:47 .
**connection** 23:7, 24:6 .
**consider** 15:19, 21:10, 31:24 .
**considerations** 25:21 .
**Considering** 34:7 .
**consolidated** 20:21 .
**Conspiracy** 7:16, 10:6, 10:8, 10:12, 10:17, 12:10, 12:16, 14:6, 14:10, 14:23, 19:20, 20:2, 20:10, 20:13, 21:16, 24:17, 24:20, 26:10, 32:1, 33:16, 34:11, 34:12, 35:7 .
**constitutes** 22:21 .
**constructing** 6:25 .
**contested** 21:21, 22:4 .
**contesting** 13:5, 13:6 .
**context** 18:22, 20:16, 29:14, 32:5 .
**contracts** 22:7 .
**control** 3:13 .
**convenience** 31:14 .
**convinced** 3:9 .
**Cooperative** 24:3 .
**copy** 3:16 .
**Corporation** 22:5 .

**Correct** 6:1, 6:5, 19:1, 39:6 .
**counsel** 18:13 .
**Count** 4:5, 19:20, 24:21, 29:23 .
**country** 22:19, 28:9 .
**counts** 11:17, 11:20, 11:21, 15:24, 20:13, 20:24, 20:25, 21:1, 21:12, 23:24, 23:25, 24:2, 24:9, 24:21, 28:4, 28:11, 28:16, 29:24, 30:16, 38:3 .
**course** 6:3, 7:1, 16:9 .
**Courtroom** 1:24 .
**courts** 23:2, 23:8, 28:8, 31:5, 31:7 .
**covered** 4:11 .
**covers** 7:17 .
**create** 18:23, 33:3 .
**credit** 24:22, 24:24 .
**crime** 10:1, 29:14 .
**CRIMINAL** 1:9, 36:5 .
**CRR** 39:16 .
.

**< D >.**
**date** 8:8, 11:24, 15:5, 15:6, 17:24, 35:12 .
**Dated** 39:10 .
**dates** 16:13, 36:2, 36:3, 37:16, 38:20 .
**day** 14:19, 30:8, 30:9, 31:20, 39:10 .
**days** 34:5, 34:8, 34:15, 34:23, 35:5, 35:25 .
**DC** 1:48 .
**deal** 17:4, 17:8 .
**dealt** 11:9 .
**December** 16:15 .
**decide** 6:4, 9:1, 9:9 .
**deciding** 35:12 .
**decisions** 9:7 .
**defeat** 29:4 .
**Defendant** 1:13, 1:35, 1:43, 1:50, 3:24, 8:3, 10:24, 29:10, 30:19, 33:2 .
**defendants** 2:20, 7:18, 9:24, 15:1, 19:20, 20:2, 33:16 .

**defendants.** 31:18 .
**Defender** 1:39, 35:23, 36:18 .
**defenders** 16:3 .
**defense** 34:18 .
**defenses** 23:19 .
**defer** 19:19, 37:12 .
**deferred** 38:7 .
**define** 10:8 .
**defraud** 24:17 .
**denial** 7:25, 8:1 .
**denied** 38:6 .
**denies** 8:3 .
**deny** 11:1, 11:6, 11:7 .
**depending** 20:8 .
**depends** 34:4 .
**determination** 20:5, 20:10 .
**determine** 35:24 .
**determined** 21:9 .
**determining** 28:10 .
**developed** 28:25, 34:22 .
**devices** 3:10 .
**diametrically** 9:23 .
**difference** 7:19, 14:18 .
**different** 2:24, 14:17, 14:21, 14:22, 15:1, 20:16, 20:22, 22:13, 23:21, 23:23, 27:7, 29:11, 31:24, 32:13, 38:5 .
**dilutes** 13:16 .
**direct** 19:21, 25:11 .
**direction** 17:13 .
**directly** 4:21, 4:25, 5:2, 5:7, 25:8 .
**directors** 24:4 .
**disagrees** 5:10 .
**discretion** 5:9, 5:11, 7:1, 13:6, 13:17, 28:15 .
**discuss** 3:1, 20:19, 29:6 .
**discussion** 6:16 .
**dispersed** 36:7 .
**disposition** 38:8 .
**dispute** 22:8, 22:10, 23:1 .
**dissipate** 13:9 .
**distinct** 32:12 .

**distinction** 14:1 .
**District** 1:1, 1:2, 31:9, 39:4 .
**DIVISION** 1:3 .
**doing** 35:13 .
**done** 7:5, 7:6, 17:18, 37:10 .
**doubt** 12:12, 15:14 .
**down** 14:16, 17:6, 25:21, 31:20 .
**drafting** 21:25 .
**drug** 7:2 .
**duplicate** 3:16, 3:21 .
**duplicative** 24:13 .
**during** 9:19, 10:4, 10:5, 10:13, 18:19, 19:4, 19:11, 23:9, 28:25 .
.

**< E >.**
**e-discovery** 3:12 .
**earlier** 18:16, 29:24 .
**early** 36:3 .
**easier** 36:19 .
**easiest** 34:4 .
**ECF** 3:25, 38:2, 38:5 .
**economy** 16:18, 26:2, 28:8, 28:10, 28:23, 30:15, 30:23, 31:8 .
**efficiency** 25:22, 31:14, 31:21, 32:23 .
**eight** 34:8 .
**either** 2:20, 7:22, 8:9, 19:18, 20:9, 22:9, 31:6, 35:15 .
**election** 19:7 .
**elements** 22:24 .
**Eleventh** 15:16 .
**embezzlement** 11:20, 15:24, 16:2, 17:10, 20:13, 20:25, 21:17, 22:17, 23:23, 24:1, 24:16, 32:1, 32:15, 33:15, 34:13, 36:17 .
**embezzlements** 15:25, 27:9 .
**employees** 24:3 .
**encounter** 19:13 .
**end** 7:10, 31:20, 36:4 .
**endorsed** 4:23, 12:11,

12:14, 14:19 .
**endorsements** 18:1 .
**endorsing** 13:12 .
**enforcement** 28:21, 29:1,
    29:2 .
**engaged** 15:4, 15:5 .
**enough** 23:10, 32:7 .
**enrich** 24:18, 24:20, 25:4,
    29:16 .
**enriches** 25:7 .
**ensure** 3:17 .
**entertain** 33:9 .
**entirely** 23:24, 23:25, 35:5,
    37:6 .
**entitled** 3:24 .
**erroneous** 10:6 .
**Esquire** 1:29, 1:30, 1:37,
    1:38, 1:45 .
**essentially** 10:10, 10:21,
    22:8, 25:2, 25:15, 25:20,
    29:18 .
**estimate** 34:5, 35:4 .
**estimates** 35:3 .
**Europe** 36:22 .
**event** 27:12 .
**everybody** 37:21,
    38:9 .
**everyone** 2:4, 18:9 .
**everything** 15:12,
    30:7 .
**evidence** 3:14, 5:12, 6:14,
    6:24, 11:7, 13:19, 13:20,
    14:3, 14:4, 14:6, 14:10,
    23:15, 25:6, 25:14,
    25:17, 26:6, 26:23, 27:6,
    27:9, 28:3, 30:4, 30:6,
    30:16, 30:20, 31:3,
    32:13, 32:14, 32:25 .
**exact** 25:15 .
**exactly** 18:15 .
**example** 23:4 .
**except** 22:24 .
**exception** 26:9 .
**exclude** 6:14, 11:7,
    14:2 .
**excluded** 14:11 .
**exculpatory** 5:2, 5:23,
    5:25 .
**excuse** 31:9 .
**executed** 19:12 .

**existence** 22:7, 22:24 .
**expect** 5:17 .
**expectation** 35:15 .
**expected** 13:11 .
**expenses** 32:6 .
**explain** 3:4, 12:8 .
**explaining** 28:13 .
**explains** 18:1 .
**extend** 8:5 .
**extensive** 16:25,
    32:14 .
**extensively** 17:25 .
**extent** 3:22, 4:3, 6:18,
    10:24, 13:17, 20:4 .
**extra** 27:16 .

**< F >.**
**face** 5:22, 21:9 .
**fact** 10:3, 12:19, 23:8,
    28:22, 29:2, 29:21 .
**factors** 27:16, 31:22,
    31:24 .
**facts** 10:16, 22:15, 22:16,
    23:3, 28:24, 29:8 .
**factual** 8:22, 10:5, 21:15,
    25:5 .
**fair** 15:18, 31:16 .
**fairly** 34:22 .
**fall** 36:2, 37:16 .
**false** 5:2, 5:24, 8:18,
    8:22 .
**falsity** 7:13, 10:22 .
**familiar** 19:14 .
**far** 3:23, 8:5, 15:14 .
**favor** 31:22 .
**FBI** 4:22, 9:18, 16:25, 19:5,
    19:11, 25:25 .
**Federal** 1:39, 16:3, 22:7,
    22:25, 31:15, 35:23,
    39:17 .
**felon-in-possession**
    29:23 .
**felt** 9:22 .
**few** 30:18, 36:12 .
**figure** 12:7, 13:5,
    37:19 .
**filed** 2:18, 2:25, 20:21 .
**fill** 10:11 .
**final** 20:5, 38:8 .

**find** 12:14, 12:17, 12:23,
    12:24, 13:14, 15:4, 15:5,
    34:4, 35:20, 36:7, 36:12,
    36:19 .
**finding** 10:5 .
**fine** 3:24, 17:5, 36:1 .
**firearm** 29:11, 29:22 .
**firearms** 29:19 .
**First** 4:9, 19:10, 20:22,
    24:14, 26:25, 30:3, 31:4,
    36:3, 37:17 .
**Five** 27:14, 34:15 .
**flesh** 18:12, 33:10 .
**flexibility** 31:7 .
**Floor** 1:32, 1:40 .
**flurry** 25:6 .
**fly** 36:21 .
**focus** 12:5 .
**focused** 21:7 .
**follow** 5:16, 5:18,
    13:11 .
**followed** 5:15 .
**following** 13:23 .
**foregoing** 37:16, 39:5 .
**forensic** 25:24 .
**form** 15:4 .
**formalize** 38:1 .
**format** 39:8 .
**former** 25:24, 30:25 .
**forms** 38:5 .
**forth** 20:23, 21:15, 21:16,
    21:20, 22:4, 22:6,
    23:14 .
**forthcoming** 24:14 .
**forward** 12:6, 17:5, 20:10,
    33:25, 38:18 .
**found** 12:20, 12:21, 13:12,
    13:13, 29:11 .
**four** 26:9 .
**Fourth** 27:14, 28:8, 28:24,
    29:7, 29:8, 29:20,
    31:8 .
**frames** 22:13 .
**frankly** 8:8, 15:3,
    32:15 .
**fraud** 7:4, 23:1, 23:6, 32:6,
    32:15, 33:15 .
**frauds** 23:4 .
**frequently** 24:24,
    31:13 .

**Fridays** 34:2, 34:3 .
**front** 36:4 .
**fully** 18:12 .
**functioning** 3:23,
    31:14 .
**funds** 22:25 .
**furtherance** 7:15, 10:5,
    12:10, 12:15 .
.
.
**< G >.**
**G.** 1:37, 39:2, 39:16 .
**gain** 32:4, 32:6 .
**gaps** 10:11 .
**gave** 5:14, 7:7 .
**generally** 19:13, 33:2 .
**gets** 37:12, 37:13 .
**getting** 14:12, 15:17,
    36:25, 37:10, 37:19 .
**gifts** 24:19 .
**give** 34:5 .
**given** 31:7 .
**grand** 9:25 .
**grant** 3:25, 15:23 .
**granted** 11:13, 16:18,
    16:19, 38:2, 38:3,
    38:6 .
**great** 37:2 .
**grounds** 20:23 .
**Grunewald** 9:17, 9:23,
    10:15 .
**guess** 36:16, 38:1 .
**guidelines** 7:9 .
**guilty** 12:16, 12:18, 12:20,
    12:21, 12:24, 13:4,
    13:12, 13:13, 13:15 .
**guys** 36:6 .

.
**< H >.**
**hallmarks** 31:21 .
**Halverson** 1:38, 2:13 .
**handed** 14:19 .
**happen** 9:12, 16:14,
    17:6 .
**happened** 7:20, 12:12,
    13:15, 18:2 .
**happy** 33:9 .
**hard** 29:13 .
**Hawkins** 29:7, 29:9,

29:19 .
**hear** 2:22, 3:19, 6:7, 7:7,
 9:5, 9:10, 20:3, 20:12,
 27:21, 31:2, 37:15 .
**heard** 7:8, 8:12, 24:11,
 27:2 .
**HEARING** 1:22, 2:9, 2:21,
 38:18 .
**hearsay** 4:12, 4:16, 5:4,
 6:5, 7:13, 7:14, 7:21,
 10:20 .
**heart** 5:19 .
**held** 9:24, 39:7 .
**hell** 16:2 .
**hereby** 39:4 .
**hide** 7:18 .
**highlighted** 19:18 .
**hinges** 11:12 .
**hold** 31:3, 35:1 .
**HONORABLE** 1:23 .
**hopefully** 32:16 .
**Hopkins** 29:21 .
**human** 13:6 .
**hurry** 37:9 .
.

**< I >.**
**I.** 1:11, 2:8 .
**idea** 4:7, 15:16, 28:19 .
**II** 1:40 .
**illustrated** 22:1, 23:2 .
**illustrates** 22:11 .
**images** 3:9 .
**immediate** 16:4 .
**impermissible** 29:25,
 30:1 .
**implausible** 8:2 .
**implicate** 5:22, 5:25 .
**implicates** 4:21, 5:2, 5:7,
 5:21, 7:24, 10:24,
 17:3 .
**implicating** 18:6, 18:7 .
**implications** 8:1 .
**implied** 4:14, 4:15 .
**import** 6:20 .
**important** 7:5, 7:9,
 19:22 .
**in.** 13:19, 13:21, 14:4 .
**include** 22:16 .
**including** 14:15, 31:8 .

**inclusion** 8:17 .
**incorporated** 21:18, 21:24,
 22:3, 22:10 .
**incorporation** 22:5 .
**indirect** 25:12 .
**information** 22:6 .
**instances** 25:8, 25:9 .
**instead** 12:23 .
**instruct** 13:4, 13:5 .
**instructed** 12:13,
 13:21 .
**instruction** 5:9, 5:13, 5:14,
 12:23, 13:11, 18:4,
 19:25 .
**instructions** 5:18, 12:5,
 13:23, 15:3 .
**instructive** 21:11 .
**intended** 18:18 .
**intending** 11:3 .
**intent** 7:3, 33:12 .
**interest** 16:20, 18:9,
 37:10 .
**interests** 31:7, 31:14 .
**intermittent** 36:7 .
**interpret** 11:6 .
**interpreted** 6:12 .
**interpreting** 31:9 .
**interviewed** 17:25 .
**intrinsic** 30:6 .
**introduce** 18:18 .
**introduced** 10:20,
 10:21 .
**introducing** 5:24 .
**investigated** 28:21 .
**investigation** 28:25,
 29:9 .
**involve** 23:23, 24:2, 24:5,
 25:23 .
**involves** 31:13 .
**isolated** 30:20 .
**issue** 3:1, 3:4, 4:2, 4:5,
 4:20, 5:8, 5:19, 7:22,
 8:2, 8:4, 8:7, 8:9, 15:9,
 17:13, 19:21, 19:24,
 20:1, 20:4, 23:16, 26:8,
 28:23, 33:8, 35:11 .
**issues** 2:25, 3:11, 4:2, 4:8,
 5:18, 11:10, 16:5, 16:7,
 16:17, 17:19, 20:22,
 28:12, 28:14, 29:7,

33:10 .
**items** 3:2, 3:5, 3:25,
 38:4 .
**itself** 5:21, 8:21 .
.

**< J >.**
**job** 29:3 .
**join** 8:23 .
**joinder** 20:23, 25:21,
 26:21, 29:24, 29:25,
 30:13, 31:17 .
**joinders** 22:19 .
**joined** 27:5, 28:14, 28:17,
 29:2 .
**joint** 18:18, 32:24 .
**jointly** 20:11, 33:16,
 36:10 .
**Jr** 1:11, 2:8 .
**Judicial** 16:18, 25:22, 26:2,
 28:8, 28:10, 28:23,
 30:14, 30:23, 31:8,
 31:15, 31:21, 32:23,
 39:8 .
**justification** 27:4 .
.

**< K >.**
**K.** 1:38 .
**key** 29:7, 29:8 .
**kickback** 4:24, 9:20 .
**kickbacks** 5:1 .
**kickbacks.** 4:25 .
**kicked** 25:9 .
**kind** 3:10, 7:25, 14:16,
 17:20, 30:10, 34:3 .
**knowing** 37:15 .
.

**< L >.**
**laid** 28:2, 33:25 .
**lapse** 10:2 .
**largely** 32:13, 34:20 .
**last** 9:17, 10:3 .
**later** 9:19, 11:5, 19:8,
 19:23, 29:10, 29:23 .
**Laura** 1:37, 2:12 .
**Law** 1:46, 28:21, 29:1,
 29:2, 31:5 .
**least** 2:22, 4:2, 18:23,

35:17, 37:19, 38:19 .
**leaving** 36:22 .
**legal** 8:23 .
**legally** 14:14 .
**length** 33:24, 35:18 .
**lie** 9:25 .
**life** 5:13 .
**likely** 26:1 .
**limine** 6:13, 11:6, 14:2 .
**limitations** 15:2,
 15:15 .
**limited** 18:5 .
**limiting** 5:9, 5:13, 5:14,
 5:18, 18:4, 19:25 .
**line** 27:12 .
**link** 29:17 .
**list** 34:23 .
**listed** 28:21 .
**little** 3:3, 12:6, 12:22,
 15:22 .
**live** 5:13 .
**loan.** 9:21 .
**loans.** 9:22 .
**look** 6:4, 9:17, 17:5, 19:21,
 20:7, 23:20, 25:20,
 27:10, 31:4, 34:5, 36:10,
 38:18 .
**looking** 12:6, 32:19, 36:3,
 36:6, 37:17 .
**looks** 21:14, 35:19 .
**lot** 6:24, 16:2, 17:4, 18:7,
 31:6, 31:23 .
**love** 3:9 .
**lumped** 26:6 .
**Lyle** 4:14, 6:3 .
.

**< M >.**
**machinery** 31:15 .
**major** 4:13 .
**mandatory** 28:17 .
**manner** 28:1 .
**Maryland** 1:2, 1:17, 22:5,
 22:6, 23:9, 24:3, 24:6,
 26:1, 30:10, 30:24, 31:9,
 39:4 .
**material** 3:8 .
**Matt** 2:9 .
**matter** 10:21, 14:9, 25:5,
 33:14, 39:7 .

**MATTHEW** 1:29 .
**MD** 1:33, 1:41 .
**Mdbc** 24:3, 24:5, 24:7, 24:18, 24:22, 24:23, 24:24, 24:25, 25:3, 25:12, 25:13, 29:16 .
**mean** 29:1 .
**means** 32:15 .
**meat** 21:20 .
**meet** 26:25 .
**mentioned** 26:16 .
**mere** 23:8 .
**Merit** 39:2 .
**message** 33:1 .
**mind** 9:6, 11:4 .
**minimal** 30:17 .
**minute** 13:3 .
**minutes** 31:1 .
**misjoinder** 21:2, 21:8, 29:5 .
**misjoined** 21:1, 28:18 .
**missed** 33:17, 37:25 .
**Monday** 36:22, 36:24 .
**money** 25:8 .
**month** 10:11 .
**months** 9:19, 9:23, 19:8, 26:9 .
**morning** 2:4, 2:6, 2:11, 2:12, 2:15, 2:16, 4:8 .
**motion** 4:5, 6:11, 6:12, 6:13, 6:14, 6:19, 8:15, 8:24, 11:2, 11:6, 11:11, 11:13, 11:16, 11:20, 15:23, 16:21, 18:11, 19:19, 20:12, 20:20, 20:22, 21:8, 33:9, 38:2, 38:3, 38:5, 38:7 .
**MOTIONS** 1:22, 2:9, 2:24, 14:1, 14:2, 16:17, 38:1 .
**motive** 32:4, 32:7 .
**moving** 4:13 .
**MS.** 2:12, 6:9, 8:12, 8:14, 8:21, 15:8, 15:10, 18:15, 19:2, 20:14, 20:15, 27:1, 27:20, 27:22, 27:25, 33:20, 35:4, 35:8, 35:22, 36:15, 37:6, 37:23, 38:16 .

**multidefendant** 8:3 .
.
.
**< N >.**
**nature** 6:11, 13:6, 18:19 .
**necessarily** 32:3 .
**need** 3:8, 3:19, 4:8, 9:11, 9:17, 10:18, 11:3, 16:3, 17:19, 19:23, 20:12, 30:18, 35:10, 36:16, 37:12, 38:13 .
**needing** 35:19 .
**needs** 7:23, 17:10 .
**next** 11:11, 24:23, 35:25 .
**nice** 26:18 .
**Ninth** 26:18, 26:19 .
**No.** 1:9, 2:7 .
**nodding** 12:3 .
**None** 22:7 .
**nor** 31:12 .
**NORTHERN** 1:3 .
**notes** 2:1 .
**Nothing** 14:14, 19:6, 33:19, 38:14, 38:16, 38:17 .
**number** 2:25, 4:2, 4:12, 23:1, 28:7 .
**NW** 1:47 .
.
.
**< O >.**
**object** 8:17, 24:16, 24:20 .
**objects** 7:15 .
**obtained** 3:10 .
**Obviously** 5:1, 7:10, 9:9, 17:15, 19:22, 31:23, 33:6, 33:11, 35:9 .
**occasioned** 31:17 .
**occur** 23:4 .
**occurred** 11:24, 12:24 .
**offenses** 22:24, 23:10, 23:18, 23:19, 31:17, 32:1, 33:1, 33:4 .
**offer** 15:24 .
**offered** 4:15, 4:25, 5:1, 7:13, 17:2, 17:20 .
**offering** 6:4 .

**Office** 1:31, 1:39, 35:23 .
**officers** 29:1, 29:2 .
**Official** 24:18, 39:1, 39:17 .
**ointment** 36:22 .
**Okay** 2:24, 4:1, 8:10, 11:9, 17:5, 18:10, 18:21, 20:12, 37:8 .
**older** 14:15, 14:17, 14:18 .
**Once** 30:15, 30:24, 30:25 .
**one-defendant** 35:16 .
**one-week** 36:17 .
**ones** 22:10 .
**openings** 34:7 .
**opportunity** 3:21, 18:12, 19:15 .
**opposed** 9:23 .
**order** 7:23, 12:23, 13:18, 20:9 .
**Otherwise** 17:21, 37:2 .
**ought** 13:18 .
**out-of-court** 4:12 .
**outcome** 20:9 .
**outset** 31:24 .
**outside** 18:22, 23:20 .
**outweighs** 32:23 .
**overlap** 26:10, 26:11, 32:8 .
**overlapping** 23:3 .
**overlaps** 16:21 .
**overlay** 30:7 .
**overt** 9:17, 10:3, 12:9, 12:10, 12:24, 13:21, 14:15, 15:4, 15:6 .
**own** 3:3, 14:12, 21:25, 32:16 .
.
.
**< P >.**
**P.** 1:29 .
**p.m.** 38:22 .
**page** 39:7 .
**Pages** 21:14, 21:16, 21:25 .
**paper** 4:14 .
**papers** 4:11, 4:20, 17:16, 17:17, 26:17 .

**paragraph** 4:5, 24:23 .
**Paragraphs** 11:12, 21:18, 21:19, 22:3, 22:9 .
**pardon** 16:2 .
**parsed** 23:2 .
**part** 7:11, 10:16, 15:18, 21:3, 21:6, 21:12, 22:1, 23:10, 28:11, 29:3, 29:21, 30:10, 32:11, 32:19, 38:6, 38:7 .
**participate** 2:23 .
**particular** 9:11, 15:9, 20:1, 37:9 .
**particularly** 31:1 .
**parties** 4:6, 9:10, 19:21, 20:7, 33:24, 36:9 .
**passes** 25:9 .
**past** 10:1 .
**Patricia** 39:2, 39:16 .
**Patrick** 1:10, 2:8 .
**Paul** 1:30, 2:10 .
**pay** 24:25 .
**payment** 25:12 .
**payments** 24:19 .
**pending** 11:21 .
**people** 3:16, 37:10 .
**per** 10:11 .
**percent** 7:8, 9:22 .
**PERCICAK** 2:16, 4:10, 6:1, 6:3, 6:22, 9:13, 9:16, 10:15, 11:22, 12:4, 13:1, 15:12, 16:15, 16:24, 17:23, 19:1, 19:4, 26:15, 33:21, 34:22, 36:21, 36:25, 37:24, 38:11, 38:17 .
**perfect** 3:10 .
**perhaps** 14:1, 36:18 .
**Pericak** 1:45, 1:46, 2:17, 4:9, 6:21, 9:5, 14:3, 14:15, 15:11, 18:24, 26:13, 37:12 .
**period** 10:11, 10:13 .
**permitted** 2:21 .
**personal** 2:19, 24:24, 25:1, 32:4, 32:6 .
**personally** 25:3, 25:7 .
**persuaded** 10:19, 10:23, 20:1, 32:3, 32:10 .
**pick** 34:16 .

**piece** 5:12, 11:7 .
**place** 4:4, 9:21 .
**Plaintiff** 1:7, 1:27 .
**plan** 21:6, 21:13, 22:2, 22:20, 23:11, 23:13, 25:2, 27:3, 27:5, 27:17, 28:12, 29:18, 29:21 .
**players** 23:23 .
**pleading** 27:3 .
**pleadings** 22:18 .
**Please** 2:4 .
**pled** 27:1 .
**PLLC** 1:46 .
**point** 3:5, 3:20, 6:25, 11:1, 11:4, 12:4, 14:16, 16:16, 16:22, 18:14, 18:17, 19:3, 26:17, 26:23, 32:14, 33:5, 33:12, 33:13, 35:10, 36:6, 38:6 .
**pointed** 27:16 .
**points** 30:3 .
**policy** 9:3 .
**populate** 10:10 .
**portion** 16:13 .
**position** 5:17, 8:14, 17:22, 18:15, 22:6, 24:18, 25:3, 29:16, 30:4 .
**possess** 7:3 .
**possessed** 29:22 .
**possession** 29:11 .
**possible** 20:23, 21:2 .
**potential** 17:12, 20:3, 33:1 .
**potentially** 35:21 .
**precludes** 14:14 .
**prefer** 18:11, 19:15 .
**prejudice** 14:9, 25:21, 27:11, 30:13, 30:14, 30:22, 31:16, 31:21, 32:22, 33:3, 33:7 .
**prejudiced** 26:5, 30:24 .
**prejudicial** 26:4, 32:18 .
**prepared** 17:22 .
**Present** 1:50, 2:20, 11:7, 32:3 .
**presently** 9:7 .
**pressure** 9:22 .

**pretrial** 21:8 .
**pretty** 5:21 .
**primary** 20:24 .
**prior** 11:24 .
**Probably** 33:6, 34:15, 36:19 .
**problem** 14:5, 17:3, 17:7, 18:23 .
**problems** 3:11, 3:12, 16:5, 17:6 .
**proceed** 2:21, 3:7, 4:7, 20:10 .
**proceeding** 37:19 .
**Proceedings** 1:21, 38:22, 39:6 .
**process** 12:19, 13:2 .
**processing** 13:23 .
**proffer** 17:18, 17:21, 17:24, 18:20, 18:22, 18:24, 19:6, 19:9 .
**proof** 13:9, 13:17, 21:22, 22:20, 22:21, 34:19 .
**propensity** 23:15, 32:22 .
**proper** 22:19, 24:9 .
**properly** 3:23, 12:13, 28:14, 28:17, 29:1 .
**proposal** 18:8 .
**prosecutor** 17:1 .
**protections** 17:20 .
**prove** 12:9, 14:6, 23:15 .
**prudent** 16:9 .
**Public** 1:39, 35:23, 36:18 .
**purchases** 24:25, 25:1 .
**purposes** 14:8, 26:7 .
**pursuant** 39:5 .
**put** 15:3, 17:21, 23:19 .
**putting** 30:20, 35:4 .
.
.

**< Q > .**
**questions** 28:9, 30:19, 31:1 .
**quick** 16:4, 17:9, 17:11 .
**quickest** 15:25 .
**quickly** 20:7, 37:10 .

**quite** 31:11 .
**Quote** 31:12 .
**quoting** 31:10 .
.
.

**< R > .**
**raised** 17:15, 17:17, 18:13, 28:13, 33:11, 33:14 .
**ran** 11:23 .
**rather** 19:23 .
**reach** 10:18 .
**reached** 32:1 .
**read** 4:22, 8:4, 24:14, 27:2, 31:8 .
**readily** 32:4 .
**ready** 16:1 .
**real** 14:18, 24:5 .
**really** 6:14, 7:19, 8:5, 12:5, 13:7, 13:17, 14:23, 21:11, 21:20, 22:9, 23:12, 23:16 .
**Realtime** 39:3 .
**reason** 3:8, 4:20, 5:23, 6:3, 15:13, 18:2, 25:22, 32:17 .
**reasoning** 4:19 .
**reasons** 7:20, 21:2, 24:8, 25:15, 28:3, 29:25, 35:24 .
**rebuttal** 6:25 .
**receipt** 22:25 .
**received** 2:19 .
**recess** 38:21 .
**recognizing** 5:12 .
**recommend** 16:9 .
**redactions** 9:11, 11:5 .
**reference** 21:19, 21:24, 22:4 .
**referring** 19:10 .
**Registered** 39:2 .
**regulations** 39:8 .
**relate** 4:3 .
**related** 14:10, 16:17, 21:17, 21:21, 21:23, 23:24, 23:25, 26:8, 28:11, 31:1, 31:5 .
**relationship** 24:1 .
**relationships** 24:2, 24:4 .
**relatively** 17:11, 20:20 .

**relevant** 14:3, 28:10, 28:14 .
**relief** 21:8, 29:4, 38:6 .
**relinquishing** 3:13 .
**rely** 11:17 .
**remember** 7:8 .
**repeatedly** 28:1 .
**reply** 4:13, 4:14, 23:14 .
**Reporter** 39:1, 39:2, 39:3, 39:17 .
**representative** 26:1, 30:24 .
**request** 6:22, 7:10 .
**requested** 38:5 .
**requesting** 6:21 .
**require** 29:4 .
**required** 10:10, 27:13 .
**requirements** 26:25 .
**resources** 26:3 .
**respect** 13:18, 22:15, 32:21, 33:17, 37:25, 38:4 .
**respective** 33:24 .
**respond** 9:13, 27:22, 28:5, 28:19 .
**response** 20:21, 24:13 .
**result** 12:19, 12:20 .
**return** 3:2, 3:25, 38:4 .
**returned** 3:20 .
**returning** 3:5 .
**rigidly** 31:6 .
**Riley** 1:30, 2:10 .
**ripe** 18:17 .
**rise** 38:21 .
**RMR** 39:16 .
**road** 17:7 .
**role** 33:3 .
**rough** 35:2 .
**Rule** 9:12, 20:22, 21:1, 21:3, 21:9, 26:21, 26:24, 27:18, 28:6, 28:15, 29:8, 30:5, 31:11, 32:23 .
**ruling** 9:6, 11:1, 19:19, 33:5, 33:7 .
**rulings** 16:6, 38:1 .
**run** 36:11 .
.
.

**< S > .**

**S.** 1:40 .
**Satterfield** 26:22 .
**saying** 8:1, 13:19, 29:18 .
**says** 4:24, 6:3, 8:21, 9:21, 13:11, 24:16, 24:21, 24:23, 26:18, 31:19 .
**schedule** 35:9, 35:15 .
**scheduling** 19:22, 36:22 .
**scheme** 21:6, 21:12, 21:17, 21:19, 21:22, 21:23, 21:24, 22:2, 22:11, 22:16, 22:17, 22:20, 23:11, 23:13, 24:17, 25:2, 27:3, 27:5, 27:17, 28:12, 29:18, 29:21, 32:3, 32:7, 32:15 .
**search** 9:19, 10:4, 17:24, 19:5, 19:11 .
**searched** 9:21 .
**seated** 2:4 .
**second** 11:19, 14:25, 19:8, 21:19, 21:24 .
**secondary** 28:15 .
**secretly** 24:18 .
**section** 24:15, 24:16 .
**sections** 24:15, 25:2 .
**seeing** 14:9 .
**seeking** 38:3 .
**seem** 12:2, 19:16, 27:4, 32:11 .
**seemed** 18:23 .
**seems** 4:3, 4:7, 14:5, 19:17, 32:8 .
**seized** 3:2, 3:5, 38:4 .
**selection** 34:7 .
**semantics** 6:11 .
**sense** 11:10, 25:16, 33:24, 35:2, 35:14, 36:13, 37:20 .
**separate** 13:18, 14:12, 17:7, 17:11, 20:17, 20:18, 21:16, 23:6, 23:22, 25:16, 28:23, 33:9, 33:12, 35:21 .
**served** 20:17, 20:18 .
**session** 18:20, 18:22 .
**set** 21:15, 21:16, 21:20, 21:24, 22:4, 22:6, 22:21,

23:14, 23:15, 23:17, 23:19, 32:25, 35:24 .
**sets** 20:23, 20:24, 21:12, 22:22, 23:7, 23:9, 24:9, 28:4 .
**setting** 35:11 .
**sever** 11:13, 11:16, 11:20, 15:24, 16:17, 19:19, 20:12, 25:23, 31:25, 35:12, 38:2 .
**several** 35:25, 38:5 .
**severance** 11:10, 11:14, 11:15, 11:19, 14:1, 16:18, 16:19, 16:21, 27:8, 28:17, 33:17 .
**severances** 24:8 .
**severed** 17:10, 20:6, 23:8, 29:24 .
**severing** 20:2 .
**share** 22:24 .
**shorter** 32:16 .
**show** 23:17, 27:4 .
**showing** 4:22 .
**shown** 25:5 .
**shows** 27:17 .
**side** 26:19 .
**significant** 7:25, 26:11 .
**similar** 21:4, 33:7 .
**simple** 20:20 .
**simply** 14:11 .
**single** 23:5, 31:22 .
**sit** 7:5, 7:6, 34:2, 34:3 .
**six** 12:10, 34:23 .
**slightly** 36:16 .
**soliciting** 24:19 .
**solves** 16:5 .
**somehow** 12:8 .
**someone** 23:3, 23:5 .
**sometime** 35:25 .
**sooner** 19:23 .
**sorry** 16:24, 17:23, 19:4, 23:25 .
**sort** 3:1, 3:3, 4:1, 4:3, 11:12, 11:15, 32:5, 32:8, 32:16, 38:7 .
**sorted** 17:19 .
**sought** 3:2 .
**sound** 19:14, 27:2, 34:17 .
**sounds** 6:13 .

**South** 1:32 .
**specific** 35:2 .
**specifically** 33:10 .
**speed** 31:14 .
**stage** 6:20, 23:21 .
**stand** 30:25 .
**stand-alone** 3:1, 4:1 .
**standard** 9:3 .
**standpoint** 26:2, 26:4, 30:22, 30:23 .
**stands** 38:21 .
**start** 3:1, 3:3, 4:4, 8:1, 11:18, 36:24 .
**stated** 20:16 .
**statement** 4:6, 4:11, 4:12, 4:22, 5:2, 5:21, 5:24, 7:12, 7:14, 7:17, 8:18, 8:22, 9:14, 9:16, 9:20, 9:25, 10:1, 10:3, 10:12, 17:4, 17:20, 17:24, 17:25, 19:4, 19:8, 19:10 .
**statements** 16:25, 18:19, 18:21, 18:24 .
**States** 1:1, 1:5, 1:31, 2:7, 2:10, 29:6, 39:3, 39:9 .
**statute** 11:23, 15:2, 15:15, 26:24 .
**stenographically-reported** 39:6 .
**stenotype** 2:1 .
**STEPHANIE A. GALLAGHER** 1:23 .
**stipulated** 22:9 .
**Street** 1:32, 1:40 .
**stricken** 4:20, 7:11 .
**stricter** 26:24 .
**strike** 4:5, 6:12, 6:15, 6:19, 8:24, 11:2, 11:11, 13:19 .
**striking** 14:1 .
**stringent** 31:10 .
**strong** 5:12, 27:11 .
**stronger** 32:25 .
**stuff** 7:7, 13:15, 15:21 .
**subject** 33:13 .
**submit** 10:1 .
**substance** 12:14 .
**substantial** 22:21,

31:16 .
**substantive** 14:7, 14:11, 21:22 .
**suffice** 20:1 .
**sufficient** 26:21, 27:5, 27:17 .
**suggest** 23:10 .
**suggestion** 3:15 .
**Suite** 1:47 .
**support** 21:15 .
**supposed** 12:18, 13:1 .
**surprisingly** 26:18 .

.

.

**< T >** .
**tactical** 15:13 .
**targets** 7:18 .
**tax** 23:6 .
**team** 37:7 .
**technical** 31:12 .
**technicality** 13:8, 15:18 .
**tee** 19:23 .
**telephone** 1:50, 2:14 .
**temporal** 32:8 .
**ten** 7:8 .
**tend** 3:11, 3:12, 9:3 .
**term** 31:12 .
**terms** 6:21, 25:10, 28:10, 28:13 .
**test** 7:7 .
**testify** 8:7, 10:25, 25:24, 25:25, 26:2, 28:22, 29:3 .
**testifying** 30:18 .
**text** 14:11, 25:18 .
**theft** 11:20, 20:13, 24:21, 26:9, 30:8, 30:9, 30:14, 30:16, 30:21, 31:2, 31:25, 32:6, 34:13, 36:17, 38:3 .
**theory** 22:20, 28:6, 32:2 .
**they've** 22:1 .
**though** 12:23 .
**Three** 2:24, 12:10, 12:15, 16:19, 17:7, 18:1, 20:17, 20:23, 21:2, 30:3 .
**three-week** 35:20, 36:6, 36:10, 36:12 .

**timetable** 37:19 .
**timing** 26:8, 35:2, 38:19 .
**today** 2:8, 2:14, 9:12, 17:22, 19:16, 20:19, 28:2, 28:21 .
**together** 4:3, 26:6, 32:18, 33:4, 35:20, 37:1 .
**took** 34:18 .
**top** 30:7 .
**touch** 16:17 .
**tough** 5:15, 5:17 .
**Tower** 1:40 .
**transaction** 21:3, 31:11, 31:13, 32:12, 32:19, 32:20 .
**transactions** 30:21 .
**TRANSCRIPT** 1:21, 39:6, 39:7 .
**transcription** 2:1 .
**transform** 32:7 .
**trials** 15:20, 16:20, 17:8, 17:11, 20:6, 20:17, 20:19, 25:16, 25:23, 27:6, 28:23, 30:14, 33:9, 33:12, 33:14, 33:24, 35:6, 35:8, 35:12, 36:5, 36:7 .
**tricky** 36:7 .
**tried** 33:4 .
**trigger** 7:23 .
**trouble** 13:22 .
**true** 39:5 .
**truth** 4:15, 4:25, 7:14, 10:21, 10:22 .
**try** 3:17, 7:18, 9:5, 16:10, 32:18 .
**trying** 14:24, 23:16, 35:2 .
**turn** 11:13, 11:19 .
**turns** 8:2 .
**twice** 29:3 .
**two-defendant** 35:16 .
**two-week** 35:21 .
**type** 29:13 .
**Typically** 6:16, 6:18, 34:3 .
.
.
**< U >.**

**U.S.** 2:9 .
**uncontested** 12:2 .
**understand** 15:1 .
**understanding** 38:9 .
**United** 1:1, 1:5, 1:31, 2:7, 2:10, 29:6, 39:3, 39:9 .
**Unless** 4:6 .
**unpublished** 15:16 .
**until** 33:7, 36:2, 37:12 .
**upside** 14:21 .
**urge** 16:9 .
**using** 23:14, 25:3 .
.
.
**< V >.**
**vacation** 37:13 .
**Various** 11:11, 22:18, 28:8 .
**verdict** 15:4 .
**versus** 2:7, 19:24 .
**via** 1:50 .
**view** 19:25 .
**violent** 29:13 .
**vs** 1:8, 29:6 .
.
.
**< W >.**
**wait** 13:3, 37:14 .
**waived** 2:17 .
**waivers** 2:19 .
**wanted** 6:7, 16:21, 24:14 .
**wanting** 15:13 .
**wants** 14:17, 14:20 .
**warrant** 17:25, 19:5, 19:11 .
**warrants** 20:2 .
**Washington** 1:48 .
**Wayne** 1:11, 2:8, 2:17 .
**ways** 5:5, 21:11, 23:2 .
**week** 7:7, 34:4 .
**weeks** 29:10, 29:23, 36:23, 37:2 .
**weigh** 26:14, 31:7, 31:22 .
**weighing** 15:9 .
**wham** 15:22 .
**whatever** 3:8, 11:24, 12:16, 12:25 .

**whatsoever** 3:11 .
**whereby** 25:3 .
**whether** 6:4, 7:1, 9:2, 9:10, 11:12, 20:5, 28:11, 31:4 .
**will** 3:25, 7:9, 9:10, 11:6, 12:13, 19:24, 20:1, 20:10, 31:24, 33:8, 33:9, 36:1, 36:19, 37:7 .
**William** 1:10, 1:45, 2:7, 2:16 .
**window** 34:6, 35:20, 36:5, 36:6, 36:17 .
**windows** 35:21, 36:10, 36:12, 37:14, 37:20 .
**wish** 24:10, 26:13 .
**without** 31:16 .
**witness** 30:17, 30:19, 34:23 .
**witnesses** 25:23, 28:20, 28:21, 34:23 .
**word** 31:11, 31:12 .
**work** 36:10 .
**works** 23:5 .
**worry** 11:3, 15:19, 16:10 .
**worthy** 6:15 .
.
.
**< Y >.**
**year** 36:3, 37:17 .