THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | No.   SAG-21-cr-00090 |
| | ) | |
| **WILLIAM PATRICK MITCHELL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### REPLY TO DEFENDANT'S SENTENCING MEMORANDUM

Mr. William Mitchell, by and through his attorneys, James Wyda, Federal Public Defender for the District of Maryland, and Cara Halverson, Assistant Federal Public Defender, respectfully replies to the government's sentencing memorandum, ECF No. 205, renewing his request for a probationary sentence and urging the Court to reject the government's requests for the following reasons.

   I.   **The government's request for a $250,000 fine is inappropriate in this case.**

In its sentencing submission, the government requests the Court assess "a $250,000 fine, . . ." as a condition of Mr. Mitchell's supervised release. *See* ECF 205 at 2. The Court should not for two reasons. First, Mr. Mitchell was adjudged indigent by the courts, meaning he was entitled to the appointment of legal counsel because he did not have the necessary funds to hire his own lawyer. *See* ECF No. 6. Given that indigent finding, and Probation's assessment that Mr. Mitchell's current financial situation does not support a fine, it is difficult to understand the government's request to have Mr. Mitchell pay a quarter-million dollars. *See* ECF 189 at ¶ 79; page 22. Second, if Mr. Mitchell is assessed a fine, it will be increasingly difficult, if not impossible, for him to meet the demands of his expected restitution and forfeiture orders, directly contravening the sentencing goal enumerated under 18 U.S.C. § 3553(a)(6). This is all the truer

1

if Mr. Mitchell loses his current employment due to incarceration. The Court should reject the government's request for a fine.

> II. **The Court should reject the government's request that restitution be due "in full immediately" if Mr. Mitchell is given a carceral sentence.**

If the Court orders Mr. Mitchell incarcerated, which Mr. Mitchell contends would be a harsher sentence than necessary, he requests that his restitution payments be due, "within 60 days of his placement on supervised release and pursuant to a payment schedule consistent with his finances, not to exceed more than 10% of his gross monthly income", rather than during his prison term.[1] To be clear, Mr. Mitchell has no issue paying his restitution immediately if he is allowed a probationary disposition and is allowed to continue in his current employment. But if the Court steps him back, requiring him to pay while incarcerated would be unjust.

The Inmate Financial Responsibility Program (IFRP), noted in the government's submission at ECF 205 at 12, works by encouraging defendants with financial obligations to sign a contract with their institution, allowing it to extract funds from an individual's commissary account on a quarterly or monthly basis. Though voluntary, refusal to participate in the IFRP may welcome sanctions that disallow participation in rehabilitative programming, a consequence that contradicts Congress's sentencing goals. Additionally, funds are deposited into commissary accounts in one of two ways: 1) an individual gains employment at the institution and deposits his paycheck into his commissary account, or 2) an individual's family and friends contribute

---

[1]     Though the parties agree Mr. Mitchell is liable for $164,453 in restitution, the Court should carefully notate in the restitution order that $111,966.28 has already been paid. *See* ECF 153 at 8. Mr. Mitchell should not be expected to overly compensate MdBC's insurance company; his remaining restitution owed is $52,486.72. Mr. Mitchell does not object to the Court either signing an order for the outstanding balance of $52,486.72 or signing an order for the full restitution amount of $164,453 but noting that $111,966.28 should be credited against the balance. However, the Court should specify, in some way, that $164,453 is not the amount currently owed.

their money to the commissary account. Since there is no guarantee Mr. Mitchell would be able to obtain employment at his designated institution, the Court should consider that the funds collected by the IFRP will likely be extracted, not from Mr. Mitchell, but from innocent third parties. To ensure that restitution is paid timely, and by the one being punished, the Court should either sentence Mr. Mitchell to probation allowing him to pay immediately, or require him to only pay his restitution upon release from incarceration. Making him pay immediately while imprisoned is inappropriately punitive and should be rejected by the Court.

### III. The government's submission wrongly attributes additional conduct to Mr. Mitchell that was not agreed-to in the plea agreement and was not proven beyond a reasonable doubt in Mr. Kacher's trial.

Additionally, in its sentencing papers, the government incorrectly contends that Mr. Kacher bribed Mr. Mitchell with cash payments, asserting, "For example, on April 27, 2016, Kacher left cash under the floormat of Mitchell's tractor. [] Mitchell and Kacher also spoke in code, referring to their cash bribes as a 'reg' or 'double'." ECF No. 205 at 5. The government also supposes in its submission that lower-priced subcontractors were cheated out of bidding on the Pax Project (ECF 205 at 6-7). However, in making those bold assertions, the government failed to point to anything in the record substantiating that Mr. Kacher's jury found the government's theories factually accurate. The jury ultimately found Mr. Kacher guilty, but the "coded language", floormat money, and bidding denials, though certainly narratives in the government's case, were not listed as overt acts in any of the counts of conviction (ECF No. 177), nor were they specified as being proven in the jury's verdict form (ECF No. 181). The government may believe its own story, but there is nothing to suggest the *jury* did.[2] In fact, the

---

[2] The government's direct of Peterman, "And did it ever occur to you that you thought there was a better or more competitive bid that could have been selected instead of Bel Air

jury may have found Mr. Kacher guilty based on entirely different facts. Additionally, Mr. Mitchell did not agree to that conduct in his plea agreement and arduously asserts the government's theories regarding those issues are merely conjecture.[3]

**IV.    The government's request that Mr. Mitchell be characterized as a public official for the purposes of the Guidelines, should be denied**.

The government concedes in its own briefing that, "there is no public official defendant in this case", but then, requests the Court find Mr. Mitchell to be one. ECF No. 205 at 8. It justifies its request by proffering, "the Guidelines intended for the person receiving the bribe to have a higher base offense level than the person paying the bribe." *Id*. But, in making that proffer, the government failed to cite to any text of the Guidelines, nor its application notes, nor case law. In fact, the government failed to cite *any* authority supporting the notion that a CEO of a private cooperative is a public official simply because he accepted the bribe, rather than gave it.

Moreover, careful reading of the Guidelines makes clear that it is not just the responsibility of carrying out a government program, but the carrying out of the program when the individual "is in a position of public trust", that may transform an individual into a public official for purposes of § 2C1.1. As the Court is aware, "[t]he government bears the burden of

---

Underground?", is a highly speculative question that hardly proves another subcontractor was actually able to do the job and/or was harmed. *See* ECF No. 205 at 6-7.

[3]    Moreover, the government wrongly encourages the Court to consider MdBC's preferential treatment to BAU as some kind of aggravating conduct. *See* ECF No. 205 at 6. But this makes little sense, since MdBC's conduct of providing its subcontractor with a loan and advancing its pay on jobs was not unlawful. And, though the government is convinced this preferential treatment happened because of the kickbacks, it is just as likely that Mr. Mitchell, in his role as CEO of MdBC, felt a duty to ensure MdBC's trusted subcontractor on a multi-million-dollar contract could stay solvent and continue to perform. After all, had Mr. Mitchell failed to bail out BAU, the implementation of the Navy's contract could have been imperiled, which would have negatively affected MdBC. Far from being aggravating conduct, this favored treatment of BAU is completely consistent with a company's steward wanting to make sure the company's contract is performed.

establishing the applicability of a sentencing enhancement by the preponderance of the evidence." *United States v. Henderson*, 88 F.4th 534, 536 (4th Cir. 2023) (citing *United States v. Garnett*, 243 F.3d. 824, 828 (4th Cir. 2001)). Here, the government has failed to establish, even by such a low burden, that though Mr. Mitchell was a private CEO, he was in a position of "public trust." Therefore, application of the higher base offense level under § 2C1.1 is unwarranted.

    For all these reasons, and the reasons previously discussed in his original sentencing submission (ECF No. 209), Mr. Mitchell respectfully requests that the Court sentence him to three years of probation with the accompanying and agreed-to forfeiture and restitution orders entered.

                                            Respectfully submitted,

                                            JAMES WYDA
                                            FEDERAL PUBLIC DEFENDER

                                            _____/s/_____
                                            CARA HALVERSON
                                            Assistant Federal Public Defender
                                            6411 Ivy Lane, Suite 710
                                            Greenbelt, Maryland 20770
                                            301-344-0600
                                            Cara_halverson@fd.org