IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**WILLIAM PATRICK MITCHELL, et al.,**<br><br>Defendants. | **Case No. 1:21-cr-00090-SAG** |

**UNITED STATES' RESPONSE TO DEFENDANT**
**WILLIAM PATRICK MITCHELL'S SENTENCING MEMORANDA**

The United States of America, by its counsel, submits this Response to the Defendant William Patrick Mitchell's Sentencing Memoranda. The United States is submitting this Brief to respond to three issues raised by the Defendant.

**I.    Mitchell was a public official under U.S.S.G. § 2C1.1(a)(1).**

The Defendant argues that he was not a public official under United States Sentencing Guidelines § 2C1.1(a)(1). The Defendant cites six cases in support his position. In four of those cases, the public official status was not in dispute or the facts bore no resemblance to the facts here. The other two cases cited by the Defendant support the Government's position that Mitchell was a public official under the Guidelines.

In *United States v. Quinn*, 359 F.3d 666, 670 (4th Cir. 2004), *United States v. Conrad*, 760 F. App'x 199, 200 (4th Cir. 2019), and *United States v. Reese*, 681 F. App'x 846, 849 (11th Cir. 2017), the defendants were actual government employees and so those cases does not inform the decision here. In *United States v. Jones*, 260 F. App'x 873, 878 (6th Cir. 2008), the defendant was privately employed by a staffing company but was otherwise assigned to a government agency to provide a government service, including issuing drivers' licenses.

1

In *United States v. Dodd*, 770 F.3d 306, 308 (4th Cir. 2014), the defendant did not contest that a privately-employed correctional officer at a private prison that had a contract with BOP was a public official. Although *Dodd* bears little resemblance to this case, its limited relevance supports the Government's position. If a privately-employed correctional officer at a private prison, who was not in a position of authority, was a public official, then Mitchell, who was in charge of a $24 million Navy project should be a public official.

The Defendant's citation to *United States v. Carrasco*, 79 F.4th 153 (1st Cir. 2023) is also helpful for the Government. In *Carrasco*, the First Circuit Court of Appeals agreed with the district court that a privately-employed attorney that represented multiple municipalities was a public official because of the degree of authority that he possessed and the influence that he had over the municipalities. *Id.* at 169. The First Circuit found that the defendant met the definition of a public official because of "the duties that [he] assumed and performed under his contracts." *Id.* The defendant "was in a position of public trust that infused him with enough de facto authority to act for or on behalf of those municipalities and influence the decision-making process, particularly as it relate[d] to ensuring that the municipalities awarded contracts to" the defendant's co-conspirator. *Id.* The First Circuit further noted that the defendant had close relationships with the mayors of the municipalities and had "total influence" over each of them. *Id.*

As the Government explained in its Sentencing Memorandum, Mitchell controlled every aspect of the Pax River Project, from the technical oversight of the project to the financial aspects of the project, including selecting subcontractors, paying subcontractors, invoicing the Navy, and requesting that the Navy allocate funds to the project. The Navy had no role in the physical installation of the fiberoptic cable; the Navy only funded the project, and when they did, Larry Hill and the Navy relied on information supplied to them by Mitchell.

## II. The Court can consider the Kacher trial evidence.

Despite pleading guilty, Mitchell still fails to acknowledge that a "double" was a bribe. Mitchell argues that the Court should not consider this fact and other facts because they were not included in his Plea and were not specifically found by the jury. *See* ECF No. 211. There is no statute or case that holds that the Court's consideration at sentencing is so limited. To the contrary, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." 18 U.S.C. § 3661. The Supreme Court has further stated that the district court has "wide discretion in the types of evidence they may consider when imposing [a] sentence." *Pepper v. United States*, 562 U.S. 476, 480 (2011). The district court's fact-finding only needs to be supported by a preponderance of the evidence, and the Rules of Evidence do not apply. *See United States v. Ebert*, 61 F.4th 394 (4th Cir. 2023).

Mitchell gave preferential treatment to Kacher; he helped edit his bids, he gave him loans, he paid invoices on demand, he gave him money to pay the IRS, he gave him money to make payroll, and he gave him money to buy a house. In total, Mitchell gave or directed more than $10 million to Kacher and his businesses. And Mitchell spoke in code when discussing the bribes. All of these facts were supported by: (1) witnesses who were under oath and cross-examined; (2) text messages to and from Mitchell; (3) emails to and from Mitchell; (4) invoices paid by Mitchell; and (5) checks signed by Mitchell.

## III. Mitchell should pay a fine.

As demonstrated at the Kacher trial and in the Government's Sentencing Memorandum, Mitchell abused his access to federal dollars. Mitchell now claims that he was trying to support two households, but the bribes that Kacher paid to him and the money that he stole did not go to

any mortgage. He used taxpayer dollars for his boat, for an ATV, for a pole barn, for a trip to Costa Rica, and for other luxuries unrelated to a mortgage payment. Mitchell earned a lucrative salary at MdBC and he remained employed in the telecommunications industry throughout the pendency of the criminal case. His monthly household income exceeds his monthly expenses. PSR ¶ 69. Mitchell has the capacity to earn enough income to pay both his outstanding restitution obligation (approximately $50,000) and a fine. After reviewing the PSR and U.S.S.G. § 5E1.2(c)(3), the Government will reduce its requested fine to the Guidelines range of between $15,000 and $150,000.

                            Respectfully submitted,

                            Erek L. Barron
                            United States Attorney

By: \_\_\_\_\_/s/_____
            Matthew P. Phelps
            Christine Goo
            Assistant United States Attorneys